MARY A. SHERIDAN, RESPONDENT, v. CITY OF ST. JOSEPH, DEFENDANT, ROBERT D. FRANCE ET AL., APPELLANTS.—110 S. W. (2d) 371.

Kansas City Court of Appeals. November 27, 1937.

*Elliott & Crouse* and *W. J. Boyd* for respondent.

*Brown, Douglas & Brown* for appellants.

REYNOLDS, J.—This is an appeal from a judgment of the circuit court of Buchanan county in favor of the plaintiff against the defendants who are appellants herein for the sum of $1000. The suit as originally filed was against such defendants and against the city of St. Joseph, a municipal corporation, and the Morris Plan Company of St. Joseph, a banking corporation, as co-defendants. Before the trial, however, the suit was dismissed as to the Morris Plan Company; and it is out of the case. Upon the trial before a jury, a verdict was returned in favor of the plaintiff against the defendants who are appellants herein and against the plaintiff in favor of the defendant city of St. Joseph, upon which verdict the above-mentioned judgment was duly rendered, from which judgment, after unsuccessful motions for new trial and in arrest of judgment, the defendants Robert D., Lenore C., and Sarah C. France and Gladys France Hargrove prosecute this appeal.

The suit was for damages for personal injuries sustained by the plaintiff in falling on the sidewalk in the city of St. Joseph in front of the property owned by the appealing defendants, fronting on Francis Street in said city, which was occupied by the Morris Plan Company as their tenant and lessee, by reason of certain alleged defects and step-offs in said sidewalk, rendering its use unsafe and dangerous to travelers thereon, made by the predecessors in title of the appealing defendants in the construction of said walk and thereafter maintained therein to the date of the plaintiff's injuries.

The petition, omitting captions, signatures, and allegations as to the defendant Morris Plan Company, is as follows:

"Plaintiff for cause of action states:

"That defendant City of St. Joseph is, and at all the time in this petition mentioned, was a municipal corporation duly created, organized and existing as a city of the first class under and by virtue of the laws of the State of Missouri, with reference to municipal corporations:

"That Francis Street and Fifth Street are, and at all times herein mentioned, were public and much traveled streets and thoroughfares within the business district of defendant City of St. Joseph, with concrete sidewalks existing on both sides of each of said streets, said Francis Street extending in an easterly and westerly direction and said Fifth Street extending in a northerly and southerly direction, and intersecting said Francis Street approximately at right angles; and that, at all the times herein mentioned, said Francis Street and Fifth Street and the concrete sidewalks therein and thereon were extensively used by pedestrians both by day and by night;

"That, for many years prior to the 14th day of January, 1935, defendants Robert D. France, Lenore C. France, Gladys France

Hargrove and Sarah C. France, and their predecessors in title, were the owners of the west one hundred twelve (112) feet of Lots One (1) and Two (2), in Block Sixty-two (62) of the original town, now City of St. Joseph, the same being located at the northeast corner of the intersection of said Francis Street and said Fifth Streets, and that said defendants Robert D. France, Lenore C. France, Gladys France Hargrove and Sarah C. France were, on said 14th day of January, 1935, the owners of said lots and the building thereon situate:

. . . . . . . . . .

"That, many years before said 14th day of January, 1935, and, plaintiff verily believes and therefore states, at the time of the erection of said Donnell Court Building by defendants France, and their predecessors in title, on the lots of ground hereinabove described, the concrete sidewalk immediately in front of the premises known and designated as No. 501 Francis Street was for the convenience and benefit of defendants France, and at their request and solicitation, so constructed that, at a point thereon approximately ten (10) feet north of the north curb-line of said Francis Street and twenty-seven (27) feet east of the east curb-line of said Fifth Street, which point is immediately in front of the doorway and entrance of said No. 501 Francis Street, there was an abrupt step-off of the heighth of six (6) inches, which step-off extended east and west along said sidewalk, and which said step-off rendered that portion of said concrete sidewalk immediately north of said point and step-off approximately six (6) inches higher than the surface of said concrete sidewalk immediately south thereof; that said step-off and abrupt change and difference in the elevation of the surface of said sidewalk at said point rendered said sidewalk thereat dangerous and not reasonably safe for the use of pedestrians using the same, and especially for pedestrians and persons having occasion to enter the building and place of business occupied by defendant The Morris Plan Company of St. Joseph, Missouri, for the transaction of business, or having occasion to leave said place of business, and constituted a dangerous defect and obstruction in said sidewalk at said point;

"That defendants Robert D. France, Lenore C. France, Gladys France Hargrove and Sarah C. France, and their predecessors in title, well knew, or in the exercise of ordinary care on their part would have known, that the construction and maintenance of said sidewalk in the condition hereinabove described would, and did, render said sidewalk dangerous and not reasonably safe for use of pedestrians passing along, over and across said sidewalk, and so

knowing carelessly and negligently caused said sidewalk to be constructed and maintained in the condition hereinabove described;

. . . . . . . . .

"That defendant City of St. Joseph negligently consented and acquiesced in the construction and building and laying of said sidewalk in the manner hereinabove stated, and, at all the times since said sidewalk was constructed, built and laid, has negligently consented and acquiesced in its maintenance in such dangerous and unsafe condition; that defendant City of St. Joseph knowing of the dangerous, unsafe and defective condition of said sidewalk carelessly and negligently failed to take any steps to remedy the same prior to said 14th day of January, 1935, and carelessly and negligently allowed said sidewalk, on said 14th day of January, 1935, to be and remain in such dangerous, unsafe and defective condition, when, by the exercise of ordinary care on its part, it could have removed or remedied such dangerous, unsafe and defective condition in said sidewalk long prior to said 14th day of January, 1935, but carelessly and negligently allowed and permitted said sidewalk at said point to be and remain in such dangerous, unsafe and defective condition on said 14th day of January, 1935;

"That on said 14th day of January, 1935, plaintiff had been in the banking house and place of business of defendant The Morris Plan Company of St. Joseph, Missouri, for the transaction of business therein, and, while walking upon said sidewalk at the point hereinabove stated, which said point was in front of the doorway and entry-way of said The Morris Plan Company of St. Joseph, Missouri, was, because of said defective and dangerous condition of said concrete sidewalk thereat, caused to stumble and fall and to receive painful, severe and lasting injuries, as follows:"

Here follows a recital of the plaintiff's alleged injuries and the character and extent thereof and an allegation as to the amount of the damages sustained by her by reason thereof in the sum of $20,-000, for which judgment was prayed.

The answers of the various defendants were separately made and, after admitting the plaintiff's fall, made general denial, coupled with a plea of contributory negligence.

At the close of the plaintiff's case, the defendants Robert D., Lenore C., and Sarah C. France and Gladys France Hargrove (hereinafter, for convenience, referred to as the appellants) separately requested instructions in the nature of demurrers directing a verdict in their favor, which were by the court denied, and again at the close of the whole evidence requested instructions of the same nature, which were by the court denied.

The record substantially shows the following state of facts:

The plaintiff was, on January 14, 1935, injured as she came out

of the banking offices of the Morris Plan Company at 501 Francis Street in the city of St. Joseph, where she fell on the concrete sidewalk at a point in front of said offices, over a step-off in such sidewalk. It is alleged by the plaintiff that the step-off in the walk was the cause of her fall and consequent injury. The offices of the Morris Plan Company are in a building known as the Donnell Court Building, situated on the north side of Francis Street between Fifth and Sixth Streets in the city of St. Joseph, owned at the time of the plaintiff's injury and for some years prior by the appellants, and are on the ground floor of said building on the west side thereof.

This building was erected in the year 1902 by the predecessors in title of the appellants to the lands upon which the same stands. At that time, the sidewalk upon which the plaintiff fell was constructed by the then owners of the building and lands with the step-off therein, beginning at the west side of the said building at or near the intersection of Francis and Fifth Streets and running east in front of the entire building and in front of and beyond the offices of the Morris Plan Company. At the point where the plaintiff fell, the step-off was around six inches in depth. The appellants acquired the title to the property upon which Donnell Court Building stands in the year 1913 from their predecessors in title thereto, Albert L. France and his mother, and were the owners of such property at the time of the plaintiff's injuries.

At the time that the Donnell Court Building was erected, a brick sidewalk ten feet in width extended in front of the entire building between the property or street line as originally platted and the curb on the north side of Francis Street, approximately on a level with the front of such building. At that time the curb in the street was unusually high at the corner of the intersection of Fifth and Francis Streets and made an unusual step-off from the curb down on Francis Street at that point.

Francis Street is shown by the evidence to be a narrow street only 50 feet in width as originally dedicated, including sidewalk space on either side, between the original street or property lines. The point where it is intersected by Fifth Street is, and has been for years, one of the busiest points in the downtown St. Joseph business district. In view of the possible future widening of the street, the then owners of the land on which it was erected set Donnell Court Building a distance of about four feet back, north from the original street or property line, acting in concert with other property owners in the same block who set their buildings back for the same reason. This threw four feet into the space in front of the building, in addition to the ten foot sidewalk space covered by the old brick walk. It was intended by the then owners of the building that the additional space thus thrown out in front of the building

should be dedicated to and used by the public as a part of the side-walk upon that side of the street in travelling up and down the street and in making an entrance to the building; and the present concrete sidewalk upon which the plaintiff was injured was con-structed by the then owners of the property in place of the old brick sidewalk, covering the same space as did the old brick but upon a lower level and extending four feet on the north thereof to the build-ing line upon a higher level, making a new sidewalk fourteen feet in width in front of their property, which continued as constructed until the time of the plaintiff's injury. This new concrete sidewalk thus appears from the evidence to have been constructed in two tiers and on two different levels, one of which levels was around six inches higher than the other. The upper tier or level covering the space between the original street or property line and the building was about four feet in width. The lower tier or level was built on the original ten foot sidewalk space between the curb and the orig-inal street or property line, ten feet in width. The lower tier or level, while covering the same space as the old brick sidewalk, which was approximately on a level with the front of the appellants' build-ing, was necessarily constructed on a lower level than the old side-walk by reason of following the directions of the city engineer of the city of St. Joseph or his assistants that the curb be lowered, to remedy a defective condition existing in the old sidewalk level by reason of an unusual step-off from the curb at the west end on Francis Street.

The evidence tends to show that, by reason of an abrupt slope in the surface of the ground from the building line to the street or prop-erty line where the north side of the walk covering the original sidewalk space was, the then owners of the building, after consult-ing with eminent engineers including the city engineer of the city of St. Joseph, covered such space with a level concrete walk of the same character as that covering the original sidewalk space of ten feet, elevated about six inches at the south side above the level of the concrete covering the original ten foot sidewalk space where the two came to the same perpendicular line, both for the use of the public in traveling up and down the street and for its use in enter-ing and leaving the building. This resulted in a step-off about six inches from the upper walk to the lower.

From the time of the construction of the sidewalk, both levels therein have been continuously and uninterruptedly used, alike by the public generally in walking up and down the street and for the purpose of entering the Donnell Court Building from the street and departing therefrom.

There is an absence of evidence tending to show that, during all of the years the public has used such sidewalk prior to the plain-

622

tiff's fall thereon, any one had ever fallen or been injured thereon by reason of such step-off, although hundreds of thousands of people have passed over and up and down it.

There is evidence tending to show that the plaintiff, when she stepped over the step-off in the walk and fell, fell upon the lower sidewalk, out toward the curb, and suffered severe injuries of a permanent nature and that, on account thereof, she was put to considerable expense and contracted hospital and other bills.

## OPINION.

The appellants assign error as follows:

"First: The court erred in refusing defendants' instructions marked 'D1', 'D2', 'D3' and 'D4', in the nature of separate demurrers to the evidence, offered at the close of all the evidence in the case, and following defendants' separate demurrers offered at the close of plaintiff's case.

"Second: The court erred in giving plaintiff's instruction marked 'O'.

"Third: The court erred in giving plaintiff's instruction marked 'BB'.

"Fourth: The court erred in giving plaintiff's instruction marked 'Q'.

"Fifth: The court erred in giving plaintiff's instruction marked 'Y'.

"Sixth: The court erred in giving plaintiff's instruction marked 'R'."

1. The first point made by the appellants is as follows:

"Defendants have assigned as error the refusal of the trial court to give various instructions offered on their behalf, as well as demurrers offered at the close of plaintiff's testimony, and at the close of all the case. In general, however, the issues are all raised by the court's refusal to grant the demurrers, and can be considered under that heading. Defendants urge that, the demurrers should have been sustained for the reasons:

"(a) That there was not only a complete absence of evidence tending to show that the step-off complained of was dangerous, and the construction of the sidewalk negligent in character, but, to the contrary, a positive showing by plaintiff through her witnesses, that that form of construction was the safest which could be devised in view of the surrounding topography, and adopted only after the exercise of unusual precautions," citing Fairgrieve v. Moberly, 39 Mo. App. 31; Price v. Maryville, 174 Mo. App. 698, 161 S. W. 295; Berry v. Sedalia, 201 Mo. App. 436, 212 S. W. 34; Cooper v. Armour & Company, 222 Mo. App. 1176, 15 S. W. (2d) 946;

"(b) For the reason that these defendants could not in any event

be liable for the construction or maintenance complained of, in view of the fact that the entire area in front of their premises had become a public sidewalk before they acquired any interest in the property, leaving them neither the duty nor the power to change its form of construction, even if they so desired," citing Edmonston v. Kansas City, 227 Mo. App. 817, 57 S. W. (2d) 690; Callaway v. Newman Mercantile Co. (Mo.), 12 S. W. (2d) 491; Hanke v. St. Louis (Mo.), 272 S. W. 933; Gilleland v. Rutt (Mo. App.), 63 S. W. (2d) 199; School District Number 84 v. Tooloose (Mo.), 195 S. W. 1023; Boonville Special Road District v. Fuser, 184 Mo. App. 634, 171 S. W. 962;

"(c)  For the reason that recovery was barred by plaintiff's preexisting knowledge of the condition complained of and her own gross negligence in failing to pay any attention to the known condition of the sidewalk or the manner in which she walked over the same," citing O'Neill v. St. Louis, 292 Mo. 656, 239 S. W. 94; Maxwell v. Kansas City, 227 Mo. App. 234, 52 S. W. (2d) 487; Sloan v. American Press, 327 Mo. 470, 37 S. W. (2d) 884; Diamond v. Kansas City, 120 Mo. App. 185, 96 S. W. 492.

The second, third, fourth, fifth, and sixth assignments of error made by the appellants are so general as to present nothing for this court to review.  [University Bank v. Major, 229 Mo. App. 963, 83 S. W. (2d) 924; State v. Kelly (Mo.), 107 S. W. (2d) 19, l. c. 21, par. 7; Langston v. Howell County (Mo.), 108 S. W. (2d) 19.]

2.  Proceeding with the consideration of the first assignment and point made—

It may be conceded that, under the allegations of the petition, the plaintiff, if entitled to recover, in any event had the burden of showing that the sidewalk with the step-off therein over which the plaintiff fell was dangerous and not reasonably safe for pedestrians using the same and that the construction of said sidewalk with such step-off therein was negligent in character and that such sidewalk was carelessly and negligently constructed and maintained by the appellants and their predecessors in title.  The appellants contend that the mere presence of a step-off in the sidewalk of the character in question is not necessarily negligence *per se* upon the part of those responsible for that condition.  It is contended by the plaintiff to the contrary and that the construction of the sidewalk with the step-off therein constituted negligence as a matter of law and, if not as a matter of law, then whether its construction and maintenance were negligent became at least a question for the jury.

We do not consider that the mere construction and maintenance of the sidewalk with a step-off therein under the circumstances in the record *prima facie* constitute negligence or that the question of

its negligent construction and maintenance became a question for the jury. There is an entire absence of any evidence tending to show that such construction was faulty and negligent and that its maintenance was negligent. Such construction and the maintenance thereof were not manifestly negligent or shown not to have been rendered necessary by the topography of the space in front of the appellants' building and the slope thereof; but, upon the other hand, the evidence tends to show that such construction was made necessary by the topography of the location. There must be some evidence tending to show that the sidewalk, as constructed with the step-off therein, was negligently constructed and that it was dangerous and not reasonably safe for persons traveling thereon and that its maintenance in that condition was negligent before a *prima facie* case can be said to be made. There is no presumption from the mere fact that the plaintiff fell thereon that it was negligently constructed or was being negligently maintained.

There is uncontradicted evidence in the record appearing in the plaintiff's case tending to show that the difference in the elevations of the tiers in the sidewalk as originally constructed, which occasioned the step-off therein, was made necessary by the general topography existing in the locality and by an abrupt slope in the surface of the ground upon which the upper tier was built from the appellants' building line south to the lower tier covering the original sidewalk space, to which the appellants' predecessors were required by the city engineer of the city of St. Joseph, in building said sidewalk, to conform, which prevented the covering of that space with a sidewalk following its natural surface in that the slope thereof when built would have been so precipitous as to have rendered it dangerous and unsafe for use.

That the then owners had the right to have a sidewalk constructed in front of their building for the ordinary and usual use of the same by the public (provided that it could be done in some reasonably safe and practical manner), notwithstanding that it might serve their building, without being charged with liability therefor as a purely private benefit, is beyond question. The sidewalk in question, when built, served other properties up and down the street, abutting upon and near any sidewalk with which it connected or which could be reached by passing over it, in a like manner. It fairly appears from the evidence that it was built under the supervision of the city engineer and with his acquiescence and approval. The evidence tends to show and admits of the conclusion that, after having consulted with eminent engineers including the city engineer of St. Joseph and after having the benefit of their judgment, the architect having the construction of the building in charge, together with the owners, upon due consideration de-

termined upon a plan of construction covering the upper level with a flat concrete sidewalk upon a level from the building south to a perpendicular line where it met the lower level, of the same character as that upon the lower level, with a space of about six inches between the two tiers where they came to such perpendicular line, and that such sidewalk was constructed upon such plan with the full knowledge of the city engineer and his assistants without any objection thereto.

3. That sidewalks cannot always be built on the same level throughout, on account of the character of the surface of the ground and variations and obstructions therein, is a fact well known to all, including the judges of the court. There is, therefore, some reasonable allowance naturally to be made for slopes and step-offs to conform to and meet surface requirements and conditions.

In Fairgrieve v. Moberly, 39 Mo. App. 31, l. c. 36, it was said by this court, speaking through Judge Ellison: "If sidewalks, cross walks or streets are to be required to be made level and without incline or grade, regardless of the topography, but few towns or cities could be built."

Again, this court, in Price v. Maryville, supra, speaking through Judge Trimble, declared that a city is not liable for a step-off rendered necessary in the construction of a walk which is maintained in a reasonably safe condition, the plan of construction of which is not manifestly unsafe.

4. This case is to be distinguished upon the facts from the case of Biermann v. St. Louis, 120 Mo. 457, 25 S. W. 369, relied on by the plaintiff. In that case, no plan had ever been adopted for the building of the sidewalk there in question with a step-off in it, nor was such sidewalk built with the step-off in it. The sidewalk in question there, as originally built, extended in front of the properties of several adjoining proprietors and, as built, was somewhat higher than the established grade. All of such proprietors were required by the city engineer of the city of St. Louis to lower the sidewalk in front of their respective properties to the established grade. The step-off in that case was occasioned by one of the adjoining proprietors lowering the sidewalk in front of his property from the level on which it was orginally built to the established grade, in conformity with such requirements, and the failure of the next adjoining proprietor so to do. When the one property owner thus brought his sidewalk to the established grade and the next adjoining did not, it left a step-off in the sidewalk where the two sidewalks met, not contemplated by the city engineer, which was maintained in violation of his requirements and without his approval. There was evidence in that case tending to show and admitting of the conclusion that its presence in the sidewalk under the circumstances there

existing was dangerous and rendered the sidewalk unsafe. There is no such evidence in this case with respect to the sidewalk and the step-off here in question. There was also evidence in that case that there was no necessity for the step-off, that there was nothing in the topography of St. Louis that made such step-off necessary. In this case, the step-off was a part of the plan adopted for the construction of the sidewalk in front of the Donnell Court Building from the building line to the curb and was built therein at the time that the sidewalk was constructed. It was never maintained in violation of any requirement of the city engineer of the city of St. Joseph in any such manner as to make it presumptively dangerous; but, on the other hand, it was constructed and maintained with his acquiescence and approval. In this case, it is shown that the step-off was rendered necessary by the topography of the city of St. Joseph at the point where the sidewalk was built. The plan of construction is not in itself manifestly unsafe. Neither is the walk in the condition in which it was being maintained at the time of the plantiff's injury manifestly unsafe. Nor does it appear that it was being maintained at such time in other than a reasonably safe condition for public use.

5. The northeast corner of the intersection of Fifth and Francis Streets, where the property is located in front of which the side walk was constructed, is a hilly intersection. Fifth Street ascends to the north on a steep grade. Francis Street descends to the east on a more gradual one. When the appellants' predecessors in title erected the Donnell Court Building, they were entitled to a sidewalk upon the street in front of the building over which access to the same might be had and over which they and the public generally might pass in going to and from the same and up and down the street. Such use of the sidewalk is the usual use to which sidewalks are ordinarily subjected and for which they are intended. They were not required to let their property lie idle, merely because it did not lie upon a level grade. In constructing the sidewalk, the measure of their duty was to exercise ordinary care in its construction and to maintain it in a reasonably safe condition for public use and travel. They were required to build the sidewalk under the supervision of the city engineer of the city of St. Joseph and to conform to such street grades as were required by him and to use ordinary care in its construction. That they did this is sufficiently shown by the testimony of the plantiff's witnesses. In the plan of construction, the appellants' predecessors consulted with the architect in charge of the construction of the building and with two civil engineers, one of whom was the engineer of the city of St. Joseph. A plan calling for a sloping sidewalk was considered; but a sidewalk upon such a surface would have constituted

a bad side-slip, greater than any in the down town St. Joseph business district, according to the testimony of the plaintiff's witness Hazen, who was a civil engineer testifying for her. That plan was rejected. The plan of leaving a sidewalk fairly level from north to south with separate steps of varying height to each of the entrances to the building was considered. This plan was rejected for the reason that it would create too great a number of separate levels in the walk. The original plan considered, of building the entire walk on an approximate level in front of the building, was necessarily abandoned when the city engineer of St. Joseph required the property owners on that side of the street to drop the level of the curb in the street on the outside of the sidewalk in front of their properties to a level so low that such plan could not be followed. It is to be satisfactorily gathered from the evidence that the entire sidewalk was planned and constructed after consultation with the city engineer of the city of St. Joseph or his assistants and under his supervision or that of his assistants and in accordance with the best judgment of the property owners upon the same side of the street in that block and of the architect in charge and the engineers consulted. No objection appears to have been made to the sidewalk or the plan of construction thereof, with the step-off in it, by the city of St. Joseph or its officers from the time that it was constructed to the date of the plantiff's injuries. The record fails to disclose that any other or better plan of construction was suggested by the civil engineers who were witnesses on the trial or by any other person or witness or that any better plan was available. The record fails to show, by the testimony of any of the witnesses offered or other evidence, any criticism or impeachment of the plan of construction as dangerous and unsafe or unreasonable or of the sidewalk as constructed and maintained as being dangerous or unsafe or as being other than reasonably safe for travel.

6. The sidewalk had been in continuous and uninterrupted use since the year of 1902, a period of thirty-three years at the time of the plaintiff's injury. It was at one of the busiest points in the down town business district in the city of St. Joseph. During that time, hundreds of thousands of people had passed over it, going up and down the street and into and out of the appellants' building; and there is an entire absence of any evidence to show that any one ever fell or was injured thereon on account of the step-off, prior to the time that the plaintiff fell. Mr. Albert L. France, one of the original owners of the building, interested therein from the time of its erection in 1902 to the year 1913, a period of eleven years, testified that he never knew or heard of any one falling thereon during that time. The appellant Robert D. France testi-

fied that he had been interested as one of the owners of the building for a period of twenty-two years next prior to the time that the plaintiff fell thereon and had never heard of any one falling thereon prior to the time that the plaintiff fell. There is an entire absence from the record of any evidence to impeach the plan of construction of the walk or to show that it was faulty or negligent in any particular or that it was constructed and maintained in any faulty, dangerous, unsafe, or negligent manner.

7. In this case, the step-off was a part of the sidewalk as planned and constructed, covering all of the space in front of the appellants' building to the curb. When the strip of ground covered by the upper level was thrown outside the building and a sidewalk built thereon for public use and the public accepted and used it as such, it amounted to a dedication of the same by the owners to the city of St. Joseph and the public, which the acceptance and use by the public made complete. The then owners of the building and the city of St. Joseph were bound thereby. No set formula for a dedication is necessary. All that is necessary is some unequivocal act by the owner manifesting an intention to dedicate and an acceptance by the public. [Gilleland v. Rutt, supra; Borchers v. Brewer, 271 Mo. 137, l. c. 143, 196 S. W. 10.] Both such elements are here. After the sidewalk had been constructed and the dedication of the strip had become complete, it became immaterial that it was used by the public, among other things, to facilitate an entrance into the appellants' building or that it served the appellants' building by affording more ready access thereto by the public. The service thus rendered the appellants' building was not in the nature of a private benefit to the owners of the building. The sidewalk is not shown by the evidence to have been subjected to their own private use by the original owners of the building or by the appellants as their successors in title. The public had the right, in traveling over it, to go to any point thereon or to any point to which it led and to pass over it to other sidewalks up and down the street in reaching other property. The service rendered by the sidewalk was public and general. The benefit derived by the owners of Donnell Court Building was no more and no less than the benefit afforded by any other public sidewalk in the city for use by the public in entering places of business and buildings abutting thereon or to which it might lead or by which the public's access to such buildings or places of business might be facilitated. The evidence does not show that there was ever any interference by the original owners of the building or by the appellants (their successors in title) with the sidewalk as originally built. The step-off therein was not built by the appellants (the present owners) or their predecessors in title after the sidewalk

was originally constructed but was built therein at the time the sidewalk was constructed and as a part thereof, under the sanction of the city engineer of the city of St. Joseph or his assistants. The step-off therein is not therefore the result of any unwarranted or unusual interference therein by the appellants or their predecessors in title so as to bring them within the principles announced in the cases of Perrigo v. City of St. Louis, 185 Mo. 274, 84 S. W. 30; and Stith v. J. J. Newberry Co., 336 Mo. 467, 79 S. W. (2d) 447, relied upon by the plaintiff.

The Perrigo and the Stith Cases are not in point. Those cases are to the effect that, if a private individual throws water on a sidewalk and thereby causes ice to accumulate or constructs a coal chute in the walk or places a stairway therein or puts an obstruction of any kind on the walk for his own private purposes, he may be personally liable for an injury resulting therefrom. Such a person is held liable because he is placing something on or in the walk that does not belong there or is placed there for his own use and is not a part of the walk as originally constructed. The principle on which he is held responsible has no application to one who may fail in his duty to the city to repair a sidewalk abutting his property. A property owner owes no duty to the public to repair and maintain in a safe condition a public sidewalk abutting his property. His obligation is to the city, and the obligation to the public rests on the city and not on the abutting property owner. [Norton v. St. Louis, 97 Mo. 537, 11 S. W. 242; City of St. Louis v. Connecticut Mutual Life Insurance Co., 107 Mo. 92, 17 S. W. 637, 28 Am. St. Rep. 402; Baustian v. Young, 152 Mo. 317, 53 S. W. 921, 75 Am. St. Rep. 462; Wright v. Hines (Mo. App.), 235 S. W. 831.]

8. The appellants cannot be held liable in this case, although the sidewalk in question on which the plaintiff fell and was injured has been maintained in front of their property in the same condition it was at the date of the plaintiff's fall and injury throughout the ownership of the premises by them. The liability, if any, to plaintiff for her injury on account of such maintenance is upon the city of St. Joseph.

When the appellants acquired the ownership of Donnell Court Building in the year 1913, this same sidewalk was there with the step-off therein in the same condition that it has ever since been and was at the time of the plaintiff's fall and injury. If defective and unsafe, the duty was on the city of St. Joseph to remedy it or have it remedied. This the city of St. Joseph did not do. So far as the record shows, it has never registered any objection or protest to the maintenance of the sidewalk in the condition in which it was maintained.

In Edmonston v. Kansas City, supra, this court said (l. c. 691 of 57 S. W. (2d) ): "The sidewalk, having been used uninterruptedly for five and one-half years by the public, generally, defendant—" referring to Kansas City—"cannot escape the obligation to have kept it in repair. After such showing of user the city will be deemed to have acquiesced in the public use of the walk. In other words, it adopted the sidewalk as its own."

As contended by the appellants, if the entire space in front of the Donnell Court Building was a public sidewalk when these appellants first obtained title to the property in 1913, then they not merely had no obligation to change the plan of construction but they had, in fact, no legal right to do so. The right to do so rested solely in the city of St. Joseph. The evidence shows that the owners of the premises at the time the Donnell Court Building was erected dedicated to the public use the strip of ground upon which the upper tier of the sidewalk in question now rests, for public use as a sidewalk, and that the public thereupon accepted such dedication and had from and since said date been in uninterrupted use of the same as a sidewalk, along with the lower level or lower tier.

In Benton v. St. Louis, 217 Mo. 687, l. c. 700, 118 S. W. 418, the Supreme Court said:

"A city owns and controls its streets as a trustee for the public. It, therefore, stands charged by the law with the primary and bounden duty of keeping them free from nuisances, defects and obstructions caused by itself or by third parties if it (in the latter instance) had actual or constructive notice thereof in time to abate the nuisance, removed the obstruction or repair the defeat. It cannot shirk that duty, or shift it over to, or halve it with, others. So much is the clear law in Missouri."

It goes without saying that an abutting property owner or a private citizen cannot interfere with a public street or sidewalk thereon without the consent of the city.

In Smith v. St. Louis San-Francisco R. Co. (Mo. App.), 275 S. W. 53, the action brought was for damages for injuries sustained by the plaintiff's falling from a foot bridge alleged to have been negligently constructed and maintained by the defendant, in that it sagged and was lower on one side than on the other. In holding that a demurrer should have been sustained as to the defendant, St. Louis-San Francisco R. Co., the court said, in part, (l. c. 55 of 275 S. W.):

"Plaintiff's contention in this case is very clearly stated to be that defendant, by erecting and maintaining the bridge in question in such a manner that it was higher on one side than it was on the other, created a dangerous situation resulting in injury to plaintiff, for which defendant is liable. . . .

"But we are cited to no case which holds an abutting property owner liable for injuries caused by reason of a defectively constructed sidewalk built or repaired by such property owner several years prior to the accident, as in this case. The duty to maintain and repair sidewalks and to keep them in reasonably safe condition rests upon the city, and a failure in that particular by the abutting property owner, does not render such owner liable in damages."

In Wright v. Hines, supra, it was said (1. c. 833 of 235 S. W.): "If Locust Street, where the accident occurred, was a public street, and the sidewalk a part thereof, and had been so accepted by the city, then defendant is not liable in this case, although it may have built and maintained the sidewalk on which the plaintiff fell and was injured."

10. It is immaterial that the city of St. Joseph has never made any repairs in the sidewalk in question. That it has not done so does not impair its quality as a public sidewalk. That the city of St. Joseph has never manifested any formal acceptance of the dedication of the strip in question as a public sidewalk or made any repairs upon the sidewalk constructed thereon or any changes in its construction is immaterial where the public itself (the inhabitants of the city of St. Joseph) has manifested its acceptance of such dedication by using said strip and sidewalk thereon as a public sidewalk uninterruptedly and continuously for thirty-three years. The city of St. Joseph is bound thereby. The sidewalk in question became a public sidewalk, and the duty of its maintenance was imposed on the city. [Benton v. St. Louis, supra.]

It follows from what has been said and the conclusions reached that the instructions requested by the appellants at the close of all of the evidence should have been granted and that the trial court erred in refusing the same. The demurrers were wall based upon the two grounds A and B set out in the appellants' brief and should have been sustained. It therefore becomes unnecessary to consider the third ground advanced by appellants in support of their demurrers.

The judgment as to the appellants is reversed. All concur.