MYRTLE M. RILEY, RESPONDENT, v. WOOLF BROS. INC., A CORPORATION, AND HOMER McWILLIAMS, APPELLANTS.—159 S. W. (2d) 324.

Kansas City Court of Appeals. January 26, 1942.

*Allan R. Browne, W. B. Ennis* and *C. A. Orr* for respondent.

*Mosman, Rogers & Bell* for appellants.

SPERRY, C.—Myrtle M. Riley, plaintiff, sued Woolf Brothers, Inc., a corporation, Homer McWilliams, and Kansas City, on account of injuries suffered by her when she slipped and fell on ice within the pedestrian lane on the north side of 11th Street where said street intersects Walnut, in Kansas City, Missouri. Before the case was tried plaintiff settled with Kansas City, and dismissed as to it. The case as to the remaining defendants was tried to a jury and there was a verdict and judgment for plaintiff, against both defendants, in the sum of $2500. Defendants have appealed.

Defendants offered no evidence at the trial, and do not contend that the judgment is excessive. They do contend, however, that their demurrer, offered at the close of the evidence, should have been sustained.

There was evidence to the effect that plaintiff, at about 7:30 A. M., on December 8, 1936, while on her way to catch a bus and while

walking eastward within the designated pedestrian lane on the north side of 11th Street where same intersects Walnut Street, she slipped, fell, and was injured, on ice which had formed on the street. No contention is made that she was guilty of contributory negligence.

The evidence further tended to establish the following facts: That defendant McWilliams was the owner of a building located on the west side of Walnut Street and on the north side of 11th Street, at this intersection; that defendant Woolf Brothers, Inc., was the tenant and lessee of said building; that there was located, in Walnut Street, east of said building and north of the point where plaintiff fell, a "roadway" box which sat under the surface of the street and through which a water pipe ran; that said water pipe connected with Kansas City's water main, through a "corporation," a foot or two east of said "roadway" box; that there was a metal lid or top on said "roadway" box which had the word "water" on its top side, and which was exposed to view on the surface of Walnut Street and which lid could be raised or opened by the use of a common pick or other such instrument; that when said lid was opened a four foot key could be inserted into the "roadway" box and the water could be cut off in the service pipe above mentioned, between the main and the westward extension of said pipe; that, on the morning that plaintiff fell, at about 7:30 A. M., water was coming out of the top of said "roadway" box and was overflowing onto the street; that there was a large quantity of ice on the street in the vicinity of the box; that said ice extended southward to the point where plaintiff fell; that said icy condition had existed at this point on Walnut Street, and at said intersection and pedestrian lane, for a period of several days prior to December 8, 1936; that the water that was coming into the "roadway" box came from the service pipe above mentioned, between that point and the "corporation," but the exact source of the leak could not be discovered without first digging into the street and exposing the "roadway" box; that the "corporation" is a valve screwed into the city main for the purpose of permitting water to be drawn from the main line and through lateral service pipes leading therefrom; that the flow of water from the main into and through said lateral service pipes could be cut off at the "corporation;" that the "corporation" could not be reached through the "roadway" box but only by digging further back eastward from said box to the main, a distance of a foot or more; and that no one was permitted to dig into the streets of Kansas City by ordinance, without first having obtained a permit from the city so to do.

Witness Randle, a plumber's helper, testified that he was sent by his employer, a plumber, to repair a leak in a service pipe leading into Woolf Brothers, Inc., store, on the morning of December 8, 1936, and arrived in the vicinity at about 8:00 A. M.; that he located the "roadway" box aforesaid, saw water coming therefrom, observed

that it came from a pipe which ran from the city main under the surface of the street, (which main ran north and south under the surface of Walnut Street at this point, west of the west rail of the street car track) westerly toward Woolf Brothers, Inc.; and that he went into the basement of Woolf Brothers, Inc., and there located the terminus of said pipe.

There was evidence tending to prove that the streets and sidewalks of Kansas City, (excepting the place where the accident occurred) were free of ice at the time, and the day before, the accident occurred.

The official records of the Kansas City water department were introduced in evidence and tended to prove that a city water inspector had reported to the department on December 7, 1936, that a leak existed in a water pipe at 1026 Walnut Street, the location of Woolf Brothers, Inc., between the city water main and the "stop and waste" on the inside of the basement; that A. D. Jacobson, a licensed plumber, took out an "extension permit" from the city, on December 8, 1936, which authorized him to alter or extend the service at that point; that said permit related to Reg. No. 9619, the pipe through which plaintiff claims the leakage occurred, and the service authorized thereunder was for "Woolf Bros. premises 1026 Walnut;" and that Jacobson reported on said permit; "This service has been altered as follows: service disconnected at main corporation cock-threads sewed off. Water left off." The records further disclosed that a "service permit," bearing the notation thereon, "Renewal," was issued on December 8th or 9th, 1936, wherein it is recited: "A. D. Jacobson, plumber, is authorized to install and connect with main for Woolf Bros. to supply premises No. 1024-26 Walnut . . .;" and that Jacobson reported on said permit, which bears the city inspector's certificate thereon, as follows: "1 in. Corporation Cock in Main Pipe—2 Ft. of 1¼ in. Pipe to Stop Box—One Stop Box and Cock in street—20 Ft. of 1¼ in. Pipe from Stop Box to stop and waste and the water left on." This report was dated "12-11-1936." This permit was issued to permit repairs on Reg. 9619, as was the first. There was also evidence tending to prove that Woolf Brothers, Inc., were notified of the leak on December 7, 1936.

Other records of the water company, which were in evidence, disclosed that a permit was issued November 25, 1919, for alteration on Reg. No. 9619, and that all fixtures inside the building were, at that time, disconnected and were connected to Reg. 7805, which also runs from the main to this building but is some distance south of the line 9619. The evidence was to the effect that both lines ran into the building known as 1024-26 Walnut, and that the fixtures, inside of the building, were disconnected from one such line and connected to the other; and that the water was left turned off of Reg. 9619, inside of the building.

A city water inspector testified that he personally inspected the trench and new installations of pipe and "roadway" box, after Jacobson had finished renewals and repairs and before the trench was filled; that he saw the new pipe running from the main to the "roadway" box, and from there to Woolf Brothers. The bookkeeper for A. D. Jacobson, plumber, testified concerning Jacobson's records of this job, and her testimony and such records as were in evidence, tended to prove that the repair work was done by Jacobson's firm and that Woolf Brothers, Inc., paid the entire bill therefor, including charges for the digging permit which was obtained from the city, the stop which went into the main, the "roadway" box, the pipe used, labor, and all other charges in connection therewith. The work sheet, a part of Jacobson's records of this job, also recited: Nature of work, Renew Water Services from Main to S & W (Stop and Waste) in basement changing water lines inside basement wall. Date beginning 12-8-36, . . . Billed 12-22-1936.''

There was introduced a written lease, executed by defendant Mc-Williams, as owner, and Woolf Bros., Inc., as lessee, covering the property known as 1020-22-24-26 Walnut Street, whereby Woolf Bros., became lessee for a term of 20 years, beginning in 1934 and ending in 1954. The ordinances of Kansas City relating to the water department and service, and the rules issued by that department pursuant to said ordinances, were offered in evidence but there is no showing that they were ever read to the jury. The case was submitted to the jury solely on the question of common law negligence and, consequently, there is no question of liability, under such ordinances involved here. Therefore we cannot consider said ordinances. [Myrtle M. Riley v. Woolf Brothers, Inc., et al., 149 S. W. (2d) 864.]

Defendants contend that neither is liable to respond in damages in this case because an abutting property owner is not liable for a condition of the street not created by his affirmative act and, since there is no evidence tending to prove who installed or maintained said pipe and "roadway" box prior to the accident, or that the pipe broke through the negligence of defendants, they cannot be liable. In support of this contention they cite, and rely on, Reedy v. Brewing Ass'n., 161 Mo. 523, l. c. 536. The court there said:

"There is no suggestion either in the pleadings or evidence, that there was any defect in the pipe that burst, or that the bursting was attributable in any degree to negligence of defendant Brewing Association. Since the water did not get on the sidewalk by reason of any willful act or neglect of duty on the part of this defendant, the condition of the sidewalk in consequence was the city's affair alone.''

In that case plaintiff had pleaded that the ice upon which he fell was caused by overflowing water from an inadequately constructed gutter on defendant's building, but the evidence established that the

water came from a bursted pipe leading from a storage tank on the top of its buildings and flowed into the gutters and thence to the street; and that it did not come from rain collected from the roof into the gutters.

Defendants also cite Callaway v. Newman Mercantile Company, 321 Mo. 766, 12 S. W. (2d) 491, an opinion *en banc,* wherein the court considered the case of a pedestrian who was injured through the absence of a glass prism in a section of a sidewalk abutting defendant's property and under which defendant maintained a cellar. The court held, l. c. 497, that the abutting property owner was not liable. The section of the sidewalk, constructed by defendant property owner, was of the same width as was the remainder of the sidewalk, and was smooth and level. It had been dedicated to the city for use as a sidewalk and had been accepted as such. It therefore became the city's duty to maintain it, and if the property owner owed any duty at all in that respect it may have been one imposed by ordinance and thereby owed to the city. The court held, in effect, that the failure of the property owner to perform such duty, if one had existed, would not have formed the basis for action against him by a member of the public, but only by the city, because the city's duty to maintain sidewalks is a governmental duty, the responsibility for the performance of which could not be passed on to another. The case at bar is ruled by the common law and not by ordinance because no ordinance was proved or relied on. [Riley v. Woolf Bros., Inc., *supra.*] Defendant was not, in the Callaway case, and could not be in this case, liable simply because he was the owner or lessee of abutting real estate. [41 A. L. R. 212-213.] Personal liability can be predicated only on the building, or maintenance, by a private individual on a street or sidewalk, of something which did not properly belong there. [Bianchetti v. Luce, 12 S. W. (2d) 129, 133.] It must be shown that such object is either dangerous in its nature or because of its faulty construction, or that it became dangerous through some negligence on the part of defendant, and was thereafter maintained, knowingly, in an unsafe condition for such a period of time as would have permitted the removal of the danger prior to the happening of the injury.

In this case there is no evidence which tends to prove that defendant McWilliams either built or maintained the pipe. The only evidence on the question of construction is to be obtained from the records of the water department and the testimony of city employees called as witnesses by plaintiff. That evidence tends to prove that Reg. No. 9619 was connected with this building in 1889, and that all fixtures were disconnected and service discontinued in 1919. The records tend to prove that the water department was charging Woolf Brothers for service rendered through Reg. No. 7805 and that no statement had ever been rendered by it to Woolf Brothers in con-

nection with Reg. No. 9619. The record does not disclose when Mc-Williams became the owner of these premises but simply shows that he claimed to own, and leased same to Woolf Brothers in 1934. There is no evidence to prove that he ever maintained said pipe or knew that it was there prior to the date of the accident. There is no evidence to prove that the pipe was defective when McWilliams acquired the property, or that he knew it was defective, or that the pipe was defective when leased. There is neither pleading nor proof that "there was any defect in the pipe that burst, or that the bursting was attributable in any degree to negligence of defendant." Under such facts we think plaintiff has failed to prove facts which establish that McWilliams is liable. [13 R. C. L. 268-269.]

We think Woolf Brothers, Inc., is in the same position as is Mc-Williams so far as legal liability is concerned. Since it is not shown that the water got on the street because of the wilful act or neglect of duty of Woolf Brothers it was the duty of the city alone to remove the ice. In fact, there is no evidence here which tends to prove that repairing the leak would have removed the danger caused by ice which formed from water which may have leaked out before the leak could have been discovered and corrected.

The general rule is that the maintenance of streets and sidewalks is a governmental function; that the duty to maintain the streets in a reasonably safe condition rests upon the governmental unit having such streets and sidewalks under its jurisdiction; and that its responsibility in that respect cannot be shifted to a private person by ordinance or otherwise, although a private person may be legally required by ordinance to remove obstructions; but failure to comply with such ordinance, it has been held, will not render the offender liable except to the government. [Sheridan v. City of St. Joseph, 232 Mo. App. 615, 110 S. W. (2d) 371, 379; Wright v. Hines (Mo. App.), 235 S. W. 831, l. c. 883; Russell v. Sincoe Realty Co., 293 Mo. 428.]

The language used in the case of Reedy v. Brewing Ass'n., *supra,* is in harmony with the decision of the Supreme Court of Maine in Staples v. Dickson, 88 Maine 362. There a landowner had built a water box in the street. Thereafter he sold his land and the new owner used such box for the purpose of shutting off and turning on water supplying his premises until he constructed another, at which time he covered this box, shut off the water, and abandoned it. Thereafter it became uncovered, but not by defendant, and so remained until plaintiff was injured thereby. The court held that defendant did not construct it; that it was not shown to have been in a dangerous condition until after he had abandoned it; that the *evidence did not show that defendant caused it to become dangerous;* and that defendant was not liable for injuries suffered by one who fell into it. The court said, l. c. 367: "The peculiar danger was not of his creation, and for it he cannot be held responsible." [See also 2 Sherman and

Redfield, Negligence, par. 343; Tower v. City of St. Louis et al., 148 S. W. (2d) 100, l. c. 104.]

The St. Louis Court of Appeals, in the last above cited case, declared the law to be that the fact that defendants could not have repaired the leaking pipe without first having obtained a permit from the city of St. Louis authorizing him to dig into the street "make it obvious that they had no control over the conditions which caused plaintiff's injury any more than any other owner of property abutting on the street where the ice formed." With that declaration we are in accord. Therefore neither of the defendants are liable under the facts disclosed by the record. It cannot be said that the granting of such a permit, in such a situation as this, is a mere matter of form. Consideration of public convenience and necessity, or the personal or political attitude of the official in charge of issuing such permits, might have caused him to refuse to issue same. We cannot assume that a permit would have been issued if same had been requested; and, therefore, liability cannot be made to hinge upon the timely filing of such an application by defendants, for the mere filing of said application would not have removed the danger, and might not even have led to the granting of permission to defendants to remedy it.

The judgment is reversed. *Boyer, C.,* concurs.

PER CURIAM:—The foregoing opinion of SPERRY, C., is adopted as the opinion of the court. The judgment is reversed. *Shain, P. J.,* and *Cave, J.,* concur; *Bland, J.,* dissents.