MARGARET FLETCHER, Respondent, v. NORTH MEHORNAY FURNITURE COMPANY, a Corporation, and KANSAS CITY, MISSOURI, a Municipal Corporation, Appellants, No. 41199—222 S. W. (2d) 789.

Division One, July 11, 1949.

Rehearing Denied, September 12, 1949.

*Lowell R. Johnson, Harold T. Van Dyke, Clem W. Fairchild* and *Johnson & Davis* for appellant North Mehornay Furniture Company.

608

*David M. Proctor,* City Counselor, *John J. Cosgrove* and *T. James Conway,* Assistant City Counselors, for appellant Kansas City, Missouri.

*Dwight Roberts* and *Ira B. Burns* for respondent.

 BRADLEY, C.—Action for damages for personal injuries sustained by a fall on a sidewalk in Kansas City. Verdict and judgment went for plaintiff for $10,000.00 against both defendants and they appealed. Hereinafter appellant North Mehornay Furniture Company will be referred to as Mehornay, and appellant Kansas City as City.

Appellant Mehornay assigns error on the refusal of its motion for a directed verdict at the close of the case, and on plaintiff's (respondent's) instruction No. 1. The City assigns error on respondent's instruction No. 1, and on an alleged excessive verdict.

Respondent fell about 9 a. m. November 25, 1946, while she was walking west on the south side of 11th Street in front of Mehornay's store at the southeast corner of 11th and McGee. Respondent alleged that Mehornay was negligent in that it had reconstructed a portion of the sidewalk in front of its store of a "marble or tile substance (terrazzo) which slanted and was smooth, slick, highly polished and glazed and when wet became slippery and was not reasonably safe for use by pedestrians to walk thereon"; she alleged that the City was negligent "in that it caused, allowed and permitted" Mehornay "to so construct said sidewalk and permitted same to remain in said unsafe condition for" more than a year; that both appellants "knew or by the exercise of the proper degree of care could have known that said sidewalk at said place was not reasonably safe for pedestrians to use"; that at the time respondent fell "said sidewalk was wet and thereby rendered slick and slippery."

Except admissions about which there is no dispute, Mehornay's separate answer was a general denial and a plea of contributory negligence. The City's answer was to the same effect. In Mehornay's charge of contributory negligence it is alleged that respondent's injuries, if any, "were caused or directly contributed to by her own negligence and inattention to her safety in that plaintiff passed along the sidewalk alongside this defendant's store at a time when the

weather was snowy and rainy and the sidewalks, streets, and all exposed property were wet and covered with a slush of snow and ice without watching where she was stepping.'' The City, in its separate answer and for its charge of contributory negligence, alleged that any injuries respondent may have received ''were directly caused by plaintiff's negligence in failing to use her eyes and senses in pursuing her course along the sidewalk.''

Respondent submitted her case as to Mehornay in instruction No. 1 on the hypotheses (1) that this appellant, for its own extraordinary use, constructed the terrazzo portion of the sidewalk; (2) that the sidewalk was negligently constructed in that it ''was slanted, slick, polished, and when wet became slippery, and because thereof was not reasonably safe for pedestrians.'' As to the City the jury was told in respondent's instruction No. 1 that it was the duty of the City to exercise ordinary care to keep and maintain the sidewalk where respondent fell in a reasonably safe condition for pedestrians, and that if found that the City knew or by the exercise of ordinary care could have known of the condition of the sidewalk as hypothesized in the submission as to Mehornay, etc. then a finding was directed in favor of respondent and against the City.

Respondent was 53 years old; she resided at the Drake Hotel, 1016 Locust Street, Kansas City, about two and a half blocks from the point where she fell. She was employed by the Hudnut Sales Corporation which sold cosmetics in the stores of others; her employer sold cosmetics in the Katz Drug Store at 12th and McGee Streets; this store was where she worked and she was on her way to work when she fell.

Respondent testified that on the morning of her fall she arose about 7 o'clock; saw snow on the tops of surrounding buildings; that it looked like it wasn't snowing; that she left the hotel without her umbrella; that she walked south on Locust to the north side of 11th Street; there got coffee in a restaurant; that ''it started to mist'' while she was in the restaurant; wind was from the south; that without her umbrella she knew her hair would get wet so to protect her hair, when she came out of the restaurant she crossed (south) to the south side of 11th Street; then walked west on 11th ''close as I could'' to the buildings. ''While walking west I did not notice any ice; the streets were wet, but I was not slipping as I came along; I had not seen anyone slip; there was no snow on the sidewalk; when I had walked about three feet on the terrazzo (in front of Mehornay's store) both feet went out from under me and I fell; when I fell I was walking normally; was looking ahead; the terrazzo where I fell was wet and dirty and the streets were wet. The shoes I was wearing at the time had Cuban heels about two inches high; the heels had a leather finish, no rubber. I had probably walked on the south side of 11th there before; I had been in Mehornay's store a few times.''

The sidewalk on the south side of 11th Street along which respondent walked, until she came to the terrazzo portion in front of Mehornay's store, was of an asphalt composition. In 1938, under a permit from the City, Mehornay repaired or rebuilt a portion of the sidewalk in front of its store by removing the old sidewalk in a circle like area, beginning at the building and east of the entrance doors and extending north to a point about two feet from the curb, placing terrazzo in the area removed. The terrazzo area extended around on McGee Street on the west side of Mehornay's store. The entrance was a corner entrance. The sidewalk where respondent fell slanted to the north; the slant was about 2½ inches in 9 feet, 5/18 of an inch to the foot.

Respondent's witness, Ben Poysner, a chemical engineer who testified as to the slant of the terrazzo portion of the sidewalk where respondent fell, further testified: "I examined yesterday the terrazzo that extends out on the sidewalk area and particularly that part of the terrazzo that is on the 11th Street side of Mehornay's store; the surface is quite smooth; there doesn't seem to be any great amount of abrasion on the surface; it has a rather slick appearance. Q. Did you examine it for abrasives, carborundum, or anything like that? A. I examined the surface; I didn't see any abrasives on the surface at all that you could tell by feeling. Q. You could not find any abrasives on this material? A. I could not say they ▆▆▆ were apparent; the weather was dry when I examined the terrazzo. There is oil in the asphalt; it would stick to the shoes (of pedestrians). Wet weather would certainly make the terrazzo surface more slippery; it would be slicker than the surrounding sidewalk when wet; terrazzo is slicker when wet than when dry." On cross examination the witness testified that he would hesitate to say that the terrazzo in front of Mehornay's store was "a normal type of construction of terrazzo for this neighborhood around Kansas City here on a sidewalk"; that there was not much angle (slant) on most terrazzo sidewalk he had seen; that it happens sidewalks have an angle; they are not frequent. "Some (terrazzo entrances in downtown Kansas City, we infer) are exposed; some don't have an opportunity to get rain on them, or water on them. I don't know any steeper than that" (the terrazzo in front of Mehornay's); that (the terrazzo) in front of Mehornay's "had a canopy over it".

Mehornay had evidence that the terrazzo portion of the sidewalk was constructed by it under a permit from the City; that during the time the work was being done city inspectors made inspection and examination thereof; that the work was approved by the inspectors. The contractor who did the work testified that such terrazzo construction was "not uncommon at all in the downtown district" of Kansas City. Mehornay had evidence by an architect, Richard N. Wakefield, that terrazzo is a cement mixture composed of marble

chips cement; that in case of floors or paving a nonslip abrasive material, carborundum, is added; that the function of the abrasive was "to render the surface rough enough to obtain a nonslip surface"; that he had examined the terrazzo at Mehornay's store entrance where respondent fell; that it had a normal amount of abrasive material in it. "Q. Are there any specifications accepted in your profession as constituting a normal mixture? A. Yes. Q. What are those specifications? A. Surface presented upon completion of the walk or floor would show 32 percent of the nonslip material, 48 percent marble, and 20 percent would be marble dust and cement. Q. How did this compare down there with percentage? A. From visual examination I should say it was that mixture." Wakefield also testified: "Q. Now can you tell from inspection of the character of the terrazzo, with reference to the presence or nonpresence of this abrasive? A. Yes. Q. How can you tell? A. Why? Q. Explain to us so we may know how you can tell. A. There are two ways: one would be rubbing your foot over it, determining whether it is slippery; the other by examination of the color. Nonslip has a definite color . . . Terrazzo is commonly used in Kansas City on sidewalks or exposed entrance ways; it is recognized as a proper substance for exposed entrance ways and walkways; I made a survey for six blocks in downtown Kansas City, and found twelve instances where terrazzo formed a part of the sidewalk surface; there was no difference in texture and use of abrasives in these twelve places and the terrazzo at Mehornay's."

Forrest Garrison, a witness for the City, testified that he had been a city policeman for eight years; that his district "runs from the river south to 39th Street, and from the state line east to Troost"; that this was his district at the time of respondent's fall November 25, 1946; that his hours were from 8 a. m. to 4 p. m. and that he was on duty that morning; that the condition of the weather on the morning of November 25th was "wet and sleety"; that a general condition of sleet prevailed throughout his district (which embraced the place of respondent's fall). Lester F. Wells, a city policeman, as a witness for the City, testified that on the morning respondent fell "street conditions were very hazardous, slick and icy; a freezing rain fell; that he was out all that day; that on that morning the rain froze on his car windshield and fenders; that the sleet clung to his car. The weather report for the morning respondent fell showed that a light sleet began at 5:40 a. m., ended 7:12 a. m.; light sleet and glaze began at 7:12 a. m., ended at 7:55 a. m.; light glaze at 8:22 a. m. to 8:45 a. m.; was intermittent; that the streets and sidewalks were generally slippery in the forenoon; that there was a trace of snow, sleet and ice on the ground at 6:30 a. m. and 12:30 p. m.; that the temperature ranged from 27 degrees at 8:45 a. m. to 33 at 4 p. m.

In its motion for a directed verdict Mehornay did not state the grounds relied upon, and respondent contends that complaint therefore cannot be made on overruling the motion. She cites Code Sec. 112, Laws 1943, p. 387, Mo. RSA, Sec. 847.112; Oganaso v. Mellow et al., 356 Mo. 228, 201 S. W. (2d) 365; Schubert v. St. Louis Public Service Co. (Mo. App.), 206 S. W. (2d) 708.

The present motion was "to instruct the jury that upon the pleadings and evidence adduced" the verdict must be in favor of Mehornay. Sec. 112 does not in terms require that such motion specify the grounds relied upon. The section is almost identical with Sec. 50(a) of the federal rules of civil procedure (see 2 Edmunds' Federal Rules of Civil Procedure, p. 1259), except that the federal rule specifically requires that the specific grounds for such motion be stated. The present motion, in effect, does state in general terms the grounds therefor, namely, that the "pleadings and evidence adduced" are not sufficient to support a judgment. In the Oganaso case the motion was, "Now at the close of the whole case defendants ask the court to direct a· verdict in favor of defendants." It appeared in that case that there was merit in the assignment on overruling the motion for a directed verdict, and notwithstanding the motion's deficiency the court ruled the assignment on the merits. Supreme Court Rule 3.27 was relied upon. This rule provides: "Plain errors affecting substantial rights may be considered on motion for new trial or on appeal, in the discretion of the court, though not raised in the trial court or preserved for review, or defectively raised or preserved, when the court deems that manifest injustice or miscarriage of justice has resulted therefrom." As will be seen, infra, there is much merit in Mehornay's assignment on overruling its motion for a directed verdict, and as in the Oganaso case, we rule the assignment, hence it will not be necessary to rule the sufficiency of the motion here.

Did respondent make a submissible case against either defendant? The evidence in her behalf was that the sidewalk where she fell was slick, but weather conditions on that morning, it must be conceded, contributed to sidewalk hazards. Her witness Poysner said that the sidewalk when dry was quite smooth; that there didn't seem to be any great amount of abrasive on the surface; then he said that he "didn't see any abrasives on the surface that you could tell by feeling." Then when asked, "You could not find any abrasives on this material?" he answered, "I could not say they were apparent." On cross examination Poysner said that he would hesitate to say that the terrazzo where respondent fell was "a normal type of construction of terrazzo" for the neighborhood.

On the other hand the evidence on behalf of Mehornay and the City was to the effect that the terrazzo in question was of normal construction and was such as was commonly used for entrances in downtown Kansas City; that the terrazzo, in composition, measured

up to accepted requirements as to abrasives, etc.; that there was no difference "in texture and use of abrasives" between the terrazzo where respondent fell and the terrazzo entrances at twelve other nearby places. Respondent does not contend that the slant of 5/18 of an inch to the foot especially contributed to her fall; her evidence, and that of her witnesses, was directed more to the surface condition than to the slant. It is common knowledge that reasonable slant in sidewalks for drainage purposes is common and necessary. See Sheridan v. City of St. Joseph et al., 232 Mo. App. 615, 110 S. W. (2d) 371.

Directed particularly to Mehornay, respondent in the brief says that "when abutting property owner or occupier makes an extraordinary or special use of the public sidewalk for his own convenience or purpose, he owes the duty to the public to exercise reasonable care to guard the public from injury and he may be liable for injuries to a member of the public which are sustained as the result of the conditions which he was instrumental in creating." In support of the proposition respondent cites: State ex rel. Shell Petroleum Corporation v. Hostetter et al., 348 Mo. 841, 156 S. W. (2d) 673; Berry v. Emery, Bird, Thayer Dry Goods Co. et al., 357 Mo. 808, 211 S. W. (2d) 35, and other cases. The cases cited support the proposition, but such owner or occupier is not liable unless some duty to the public respecting the sidewalk has been breached.

In Schmoll v. National Shirt Shops, 354 Mo. 1164, 193 S. W. (2d) 605, the plaintiff fell on the terrazzo entrance to the defendant's store and was injured. In that case the terrazzo was wet and slick as in the present case; embedded in the terrazzo in that case were brass letters and these were wet and slick. It was held that the plaintiff could not recover. In ruling the case the court said [193 S. W. (2d) 1. c. 607]: "The evidence shows terrazzo is commonly used as a flooring in lobbies of stores, and the use of brass in providing expansion joints is likewise common in the construction of terrazzo flooring; it has not been considered that terrazzo (with brass expansion joints) as a flooring is inherently dangerous; and defendant is not to be held negligent merely because of the use of terrazzo with brass expansion joints in the construction of the lobby floor. Cameron v. Small, supra [182 S. W. (2d) 565]. It is also seen from the evidence that the use of brass in embedded designs or lettering indicating a trade name or mark, or a name of a store is not uncommon in the terrazzo floors of entrance lobbies of stores; however, brass becomes smooth and highly polished by wear, and, when so, is slippery when wet. Yet, defendant may not be necessarily subjected to liability because the brass so used was slippery and though the plaintiff's fall was occasioned by the dangerously slippery condition of the brass. There is no liability of defendant for injuries from dangers that are obvious, or as well known to plaintiff as to defendant."

Respondent cites the old case (1879) of Cromarty v. Boston, 127 Mass. 329. In that case it is said: "If a walk is constructed of material so smooth and hard that travelers shod in the ordinary way are defeated or obstructed in their attempts to pass over it by inability to get the hold upon it with their feet which is necessary to their walking forward, or the want of which causes them to lose their balance and fall, such walk cannot be said, as a matter of law, to be safe and convenient. And if, in a sidewalk, the chief part of which is in proper condition for travel, a small part of the surface is constructed of material different from the remainder, and so smooth and slippery that a foot traveler, stepping suddenly upon it from the portion otherwise constructed, necessarily or probably slips and is likely to fall, it cannot be said, as a matter of law that such walk is not defective." In the Massachusetts case the question of liability was a matter of construction of a statute. In that case the plaintiff slipped on a sidewalk cover made in part of glass; the surface of the cover had become smooth and slippery from wear. There was no weather condition in the Massachusetts case as there is here. Respondent does not claim that either Mehornay or the City is responsible, under the facts, for any hazard added to the situation by the weather condition.

Respondent is entitled to the benefit of all the most favorable evidence in support of her case and all of the fair inferences therefrom, but when this is done we do not think it can be justly said that she made a submissible case. The judgment should be reversed and it is so ordered. *Dalton* and *Van Osdol, CC.,* concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur.