**Nell JETT (Plaintiff), Respondent,**

v.

**CITY OF PARIS, a Municipal Corporation (Defendant), Appellant.**

No. 30289.

St. Louis Court of Appeals.

Missouri.

July 21, 1959.

Rehearing Denied Aug. 24, 1959.

Jackson A. Wright of Fry, Edwards & Wright, Mexico, and Olliver W. Nolen, Paris, for appellant.

James P. Boyd, Paris, and William B. Fahy, Monroe City, for respondent.

DOERNER, Commissioner.

This is an action for damages against the defendant City of Paris resulting from plaintiff's fall on a sidewalk. At the close of plaintiff's case, defendant offered a motion for a directed verdict, which was refused. Defendant did not call any witnesses, and, the case being closed, filed a motion to dismiss plaintiff's cause of action, which was overruled. The case was then submitted to the jury, resulting in a verdict in favor of plaintiff for $5,000 on which a judgment was entered. After an unavailing motion to set aside the judgment, and to enter judgment for defendant in accordance with its motion for a directed verdict, defendant appealed to this court.

Only one issue has been raised for review, whether plaintiff was guilty of contributory negligence as a matter of law. With commendable frankness, defendant concedes that because of the jury finding plaintiff is entitled to have the evidence viewed in the light most favorable to her. From that standpoint the evidence was as follows: The City of Paris, Missouri, is located in Monroe County and is a city of the fourth class. Washington Street is a public north-south street, and the block with which we are concerned lies between Marion Street

on the north, and Monroe Street on the south. The post office is located on the northwest corner of Washington and Monroe. North of the post office, on the west side of Washington, there is only one other building, referred to in the evidence as the Erma Brooks property.

A concrete sidewalk, 3½ feet in width, runs along the west side of Washington from Marion to Monroe Street. It had been constructed with a sand and gravel base, on which was laid a concrete topping about one or two inches thick. At a point about one-fourth of a block south of Marion Street, almost in front of the Erma Brooks property, a portion of the concrete topping was broken out and missing. The resulting depression was somewhat triangular in shape, extending practically the width of the sidewalk on the south side. Measured along the west edge of the sidewalk, it was 6′ 3″ to the north edge of the break, while the distance from the south edge to the north edge, measured along the east edge of the sidewalk, was about 50″ long. At its deepest point the depression was about 2⅛″ in depth, the bottom was packed hard from pedestrian traffic, fairly level, and was 2″ deep at the south end. According to some witnesses, the edge of the concrete on the south side of the break was ragged and rough, but the length or size of the ragged edges were not developed in the evidence other than that it was described as "jaggedy." Neither of the two small photographs introduced in evidence by plaintiff are close-ups of the southern edge, and as can best be discerned from them, there were no projections of any appreciable length protruding from the edge. Various witnesses testified the defective condition had existed for from five to ten years.

Plaintiff, a housewife, 58 years of age, lived with her husband on the north side of Marion Street, about three-fourths of a block west of Washington Street. According to her family doctor, in December 1956, he was called to treat plaintiff for a loss of feeling in her left arm and leg, but on examination he found she could use the muscles of her arm readily, and those of her leg very readily. He told plaintiff her condition resembled a stroke, but it was his opinion that the sensory loss was due to high blood pressure. However, it was also his opinion at the trial that by the day of the accident the plaintiff had completely recovered, and that she was able to get around as any ordinary person would, except that she had developed a fear of falling, so that he had suggested that she use a cane, not because she needed it in walking, but to bolster her self-reliance.

Plaintiff testified as to her prior trips to the store and other places, and conceded that she had no difficulty in walking up and down the four steps between her home and the sidewalk in front of it, each of which step was five or six inches high. On cross-examination she testified:

"Q. Do you know whether there— if there was any residual paralysis from the stroke, do you feel that that had anything to do with your falling there that day? A. I do not.

"Q. Do you feel that you would have fallen, or that you were as able to get around as any ordinary normal person that day? A. I think so, yes, sir."

According to the plaintiff the day of the accident, May 31, 1957, was a beautiful, pretty day, the sun was shining, and the ground was dry. About 4:00 p. m. she left her home with the intention of going to the post office. Plaintiff proceeded east on Marion Street to Washington Street, and then southwardly on the west side of Washington Street. She testified that as she approached the broken place in the sidewalk she observed it, saw its size and condition, including the rough and broken edges on the south side, and its depth, particularly the 2″ step-up at the south end. She was looking at the broken place at all times, was thinking about what she was doing, and her attention was not diverted from it in any way. Plaintiff further stated that she felt that by taking proper precautions she could cross the depression, and stepped into it. What oc-

curred when she attempted to step up at the south side is best described in her own words. On direct examination she testified:

"*  *  * I was walking along looking, watching the sidewalk, I always look down and when I came to this part, naturally, I had been able to go along with my cane, and naturally I was trying to go over this place, well, my toe or heel of my shoe caught in there and caused me to fall. It was done so quickly, I couldn't estimate."

And on cross-examination she stated:

"Q. But as you started to step up were you looking down and watching where you were walking? A. I was.

"Q. But as you started to step up you hooked either your toe or your heel, as I understand it, on the edge of that? A. That's right."

Earlier she testified it was her right foot which caught on the edge of the concrete.

Plaintiff offered no reason as to why her foot caught on the edge of the sidewalk. When asked, she testified:

"Q. Do you know of any reason why, Mrs. Jett, you couldn't step over that two inch, or two and a half inch raised portion at the south end? A. No, I don't know of any reason why I couldn't."

As a result of plaintiff's fall she sustained a subcapital fracture of the left femur, necessitating the removal of the ball end of the bone, where it fitted into the hip socket, and its replacement with a steel prosthesis. There is no question raised about the extent or permanency of her injuries, or that the verdict was excessive.

As defendant points out, this case is readily distinguishable from those cases where a plaintiff had no actual knowledge of the defect in the sidewalk, and his attention was diverted, as in Adams v. Kansas City, Mo. App., 266 S.W.2d 771; or one in which the plaintiff had prior knowledge of the defect, but was not aware of his proximity to it because of darkness and a distraction, as in

Butler v. City of University City, Mo.App., 167 S.W.2d 442; nor is it one in which the plaintiff had no prior knowledge of a dangerous condition in the street, and was unable to see it because of darkness, as in Robison v. Kansas City, Mo., 181 S.W. 1004. In all such cases the question of plaintiff's contributory negligence was held to be an issue for the jury. Rather, this is a case where plaintiff had actual knowledge of the defective condition of the sidewalk, was presently aware that she was encountering it, realized that some precautionary measures were required of her, saw the rough edge of the concrete, was fully cognizant of the fact that in order for her to get out of the depression it was necessary for her to step up a distance of two inches, was watching where she was walking, and was caused to fall when in trying to make the step her foot caught on the edge of the concrete.

■ Whether a plaintiff has been guilty of contributory negligence as a matter of law depends upon the particular facts and circumstances surrounding the injury. Wapelhorst v. Lindner, Mo., 269 S.W.2d 865; Williamson v. St. Louis Public Service Co., 363 Mo. 508; 252 S.W.2d 295. In the determination of that question we look to those decisions of the Supreme Court in which the factual situations are the most similar to those in the instant action, for as stated in Medaris v. City of Hannibal, Mo. App., 185 S.W.2d 340, in applying cases which have been decided what may have been said in the opinions should be confined to, and limited by, the facts of the case under consideration when the expressions relied on were made, and should not be extended to cases where the facts are essentially different.

Plaintiff urges that the law applicable to this case is to be found in Neagle v. City of Edina, Mo.App., 53 S.W.2d 1077. In that case plaintiff undertook to walk along a sidewalk in which, over a period of years, the bricks had become uneven, and in doing so stubbed her toe on a raised brick and fell. Plaintiff was well acquainted with

the defective condition of the sidewalk, and testified that she knew it was "dangerous." On appeal, defendant contended that in knowingly using a sidewalk which was obviously dangerous the plaintiff had been guilty of contributory negligence as a matter of law. The Supreme Court, however, construed the word "dangerous" as used by the plaintiff to mean unsafe. It held that although a pedestrian is aware of a defect in a sidewalk he may nevertheless use it, exercising ordinary care for his own safety, and that his mere use of the sidewalk will not convict him of contributory negligence unless the defect is so obviously dangerous that no prudent person would attempt to use it. In the instant case the defendant does not contend that the plaintiff should be held to have been contributorily negligent as a matter of law merely because the plaintiff attempted to use the sidewalk, knowing that it was defective, as the defendant argued in the Neagle case. Rather, the point urged by the defendant here is that the defendant was contributorily negligent in the manner in which she used the sidewalk. Because of that distinction, the Neagle case is not applicable here.

The case in which the facts most closely resemble those before us is Waldmann v. Skrainka Construction Co., 289 Mo. 622, 233 S.W. 242, 243. There the defendant, under a contract with the city of St. Louis, was engaged in lowering the grade of and paving an alley. In the course of that work it removed the cement sidewalk which had previously run across the mouth of the alley, and had excavated to a depth of ten inches below the sidewalk which remained on either side of the alley. While on her way to a picture show, before dark, plaintiff, "a married lady of mature years," passed over the excavation in safety. After the picture show, about 10:00 p. m., she started to return home by the same route, accompanied by her maid, whom she had met at the show. When they reached the excavation the maid preceded plaintiff, and crossed over safely. Plaintiff stepped down into the excavation

on the north side, and walked across it without difficulty to the south side, a distance of 15 feet. As plaintiff undertook to step up the ten inch rise on the south side her foot caught, she testified, on a projection from the edge of the cement walk, and she fell and was injured. It was shown that the projection or saw-tooth edges resulting from the cutting through of the cement sidewalk were from one-eighth to three-eighths of an inch in length. Only one light was at the site, a red lantern in the middle of the excavation near the curb. After reviewing the authorities and the facts as shown by plaintiff's evidence, the Supreme Court said (233 S.W. loc. cit. 247):

"We therefore hold that plaintiff's own testimony shows that she was guilty of such contributory negligence as prevented her having any case for the jury."

The facts in the case before us are much more favorable to the plaintiff than those in the Waldmann case. Here the accident occurred on a bright, sunny day, while there it happened at night. Here the step up was only two inches, while there the plaintiff was required to step up a matter of ten inches. And in this case the plaintiff testified only that she had caught her foot on the edge of the sidewalk, whereas in the Waldmann case the plaintiff stated that her foot caught on a projection. We are bound by the decision of the Supreme Court in that case, and therefore rule that plaintiff was guilty of contributory negligence as a matter of law.

For the reasons stated, the Commissioner recommends that the judgment be reversed.

PER CURIAM.

The foregoing opinion by DOERNER, C., is adopted as the opinion of the court.

Accordingly, the judgment is reversed.

WOLFE, P. J., and ANDERSON and RUDDY, JJ., concur.