Elva SUTTON and Titus Sutton, Appellants,

. v.

FOX MISSOURI THEATRE COMPANY, a Corporation, and the City of Joplin, Respondents.

No. 47743.

Supreme Court of Missouri,

Division No. 1.

June 13, 1960.

Edward V. Sweeney, Monett, William H. Burden, Joplin, for appellants.

Karl W. Blanchard, Ralph H. Smith, Jr., Seiler, Blanchard & Van Fleet, Joplin, for respondent Fox Missouri Theatre Co.

William O. Russell, Joplin, Loyd E. Roberts, Joplin, for respondent, City of Joplin.

HOLLINGSWORTH, Judge.

In this action, plaintiffs Elva Sutton and Titus Sutton, husband and wife, seek dam-

ages in the total sum of $40,000 from Fox Missouri Theatre Company, a corporation, and the City of Joplin, Missouri, as a result of personal injuries sustained by Mrs. Sutton on December 26, 1957, when her foot caught upon the base of a recruiting sign placed and maintained by the U. S. Naval Department upon a public sidewalk in the City of Joplin in front of the entrance of the Fox Theatre, causing her to trip and fall upon the sidewalk as she attempted to walk through a crowd of the theatre's patrons standing in front of its theatre awaiting admission. The petition alleges Mrs. Sutton's damages for personal injuries sustained in the sum of $35,000 and Mr. Sutton's damages for loss of services, consortium and medical expenses incurred in the sum of $5,000. At trial in the Circuit Court of Jasper County, the trial court sustained separate motions filed by defendants at the close of plaintiffs' evidence and directed a verdict in favor of both defendants. Plaintiffs have appealed from the judgment rendered in accordance with the verdict so returned.

The negligence alleged against the City was that it allowed and permitted the sign to obstruct a portion of the sidewalk in front of the Fox Theatre, making it dangerous for pedestrian traffic to pass freely to and fro; that it knew the sign was in said location and knew that large crowds of people collected in front of the theatre for the purpose of buying tickets, causing the sidewalk to be heavily crowded, and knowingly permitted Fox to appropriate the sidewalk with its crowd, thereby creating a nuisance; that the City was negligent in permitting the nuisance to exist; and that its aforesaid negligence concurred with negligence of Fox in creating the dangerous condition. The negligence alleged against Fox was that it knew of the existence of the sign on the sidewalk in close proximity to its ticket window and entrance; that it appropriated the sidewalk in front of its place of business for its own use by attracting a large crowd and in failing to open its doors so that the crowd

could enter its theatre and in failing to control or regulate the crowd and in causing and permitting the crowd to obstruct the sidewalk and obscure the view of the sign, rendering it dangerous for pedestrians; and that the aforesaid negligence of Fox concurred with the negligence of the City in failing to remove the sign.

Each defendant pleaded the insufficiency of the petition to state a cause of action against it, denied generally and specifically the facts and negligence alleged in the petition and alleged that Mrs. Sutton's injuries, if any, were caused in whole or in part, or were directly contributed to, by her negligence in failing to exercise ordinary care for her own safety, whereby both plaintiffs were barred of any right of recovery.

A detailed statement of the evidence, excluding that relating to the extent of Mrs. Sutton's injuries and Mr. Sutton's alleged general and special damages, is required.

Main Street in Joplin runs north and south. Fox Theatre, engaged in showing motion pictures, is and since 1955 has been located on the east side of the street, at 415 Main, in the "downtown" portion of the city. The front of the building is 18 feet, 7 inches in width. The sidewalk in front of the theatre and for several "doors" north and south thereof is approximately 10 feet, 6 inches in width. The ticket office sits back (east) of the building line 3 feet, 4 inches. Entrances into the theatre are on each side of the ticket office.

The naval recruiting sign over which Mrs. Sutton tripped had been maintained by the U. S. recruiting service upon the sidewalk in front of the theatre for an unstated number of years. Its position upon the sidewalk, however, was changed from time to time; sometimes it was placed near the curbline opposite the south end of the building; sometimes it was placed in like position opposite the north end; sometimes it was placed "on the inside." The city police department regularly and frequently patrolled the area in which the

theatre was located and the City had knowledge that the sign was maintained upon the street in front of the theatre and that its position in front thereof was shifted from time to time.

A picture of a portion of the front of the theatre and the sign, taken at sometime after Mrs. Sutton fell showing the sign placed near the curb opposite the south end of the theatre building, follows:

At the time Mrs. Sutton tripped upon the sign, it was situate on the sidewalk 8 to 12 inches from the curb in front of the ticket office, near the rear wheel of the bicycle shown parked at the curb and approximately at the "flagpole hole" shown in the picture. (The man shown walking south on the left side of the picture has passed the ticket office and is in front of the theatre entrance immediately south of the ticket office.) The sign is about two inches thick and 60 inches high. The width of its base is 35 inches across and 34 inches from front to back. The "cross base is an inch by a quarter inch scrap iron" and "the bottom of it is 3 and ⅛th inches off the ground."

At trial time, Mr. and Mrs. Sutton were, respectively, 72 and 64 years of age. They had lived in Joplin since 1941 and for thirteen years had lived at their present address. On the afternoon of December 26th, a clear day, they walked southward down town for the purpose of shopping at Macy's or Ramsay's stores, both of which are on the east side of Main Street, south of Fox Theatre. As they walked south on the side-

walk along the east side of Main Street and approached the theatre at about 2:20 to 2:30 p. m., they noticed a crowd of people, composed mostly of teenagers and children, extending from two doors north of the theatre to a like distance south of it. The crowd occupied the entire sidewalk, "just like about a crowd will ordinarily stand waiting for something, just up together." They were not lined up and there was no one supervising them. December 26th was a holiday for school children and Fox had advertised a show calculated to be attractive to such children, to begin at 2:30 p. m.

As plaintiffs passed through the crowd, Mrs. Sutton was in front and Mr. Sutton followed, holding her by the arm. They proceeded slowly, "inching" southward upon the sidewalk, "this way and back this way." The crowd was described by plaintiffs as consisting of 150 to 200 people, as being "dense" but "not jam up against but close" together. There was not sufficient space open to enable them to see through the crowd, but they experienced no difficulty in seeing "what was ahead"—"the people on the sidewalk." The people composing the crowd were orderly, "milling about", "going no place." Mrs. Sutton, not as tall as the general crowd, is about 5 feet in height; Mr. Sutton 6 feet, 2 inches. Neither was unduly jostled or shoved. As they passed through the crowd, there was a girl sitting in the ticket office but, insofar as plaintiffs saw, she had not begun to sell tickets.

When they had reached the center of the crowd immediately in front of the theatre, Mr. Sutton saw the recruiting sign. It was, according to Mr. Sutton's testimony, on the sidewalk due west of the "corner of the ticket office, within 8 or 10 inches of the curb"; according to Mrs. Sutton's testimony, it was on the sidewalk due west of that office, about "a foot from the curb." Mrs. Sutton came directly in front of the sign, Mr. Sutton was directly behind her, within 3 or 4 feet of the sign. Mrs. Sutton, going slowly, saw the top half of the sign and turned to her left (east) to go around it. She "caught her (right) foot on that

brace and she just shot headlong in the Fox Theatre passageway." Her shoe was jerked from her foot and she fell headlong, sustaining injuries.

Plaintiffs had known of the sign being kept in various positions in front of the theatre for quite some time. They had seen it there on previous occasions and, but for the crowd, they could easily have seen it on this occasion. They had priorly passed the theatre when there were crowds, but not as large as the one through which they were passing when Mrs. Sutton fell. Mr. Sutton testified that although both of them had seen the sign many times, they had never noticed how it was "set" or "made up." He testified that on the day in question he did not see the sign "until we got right down to it. * * * Because we wasn't paying no attention to it—to the sign."

During his testimony, Mr. Sutton placed a large "O" on the picture above shown at the place where Mrs. Sutton's foot was caught on the sign. It shows that her foot caught in the lower brace on the left side of the sign as Mrs. Sutton confronted it and attempted to go to the left of it.

Mrs. Sutton further testified: Although she had seen the sign many times before she fell, she had never noticed how it was supported. As she and Mr. Sutton passed through the crowd on this occasion, it was "thick enough you couldn't see anything up the street, they was just all around," covering the entire sidewalk in front of the theatre building. She was trying to get through the crowd. She came right in front of the sign—"would have gone right through it" had she continued. She turned to her left to get around it. If there had been no spreading base to it, she could have gotten around it safely. The crowd around it kept her from seeing it. As she attempted to go to the left of it, her right foot caught in the base. The sign was clearly and wholly visible when there was no crowd in front of the theatre.

On cross-examination, she further testified: There was no person immediately in

front of her when she tripped over it. She saw the top half of the sign as she came up to it, but never noticed the base, never thought of it "coming out like that." She was aware she was at the sign and aware that she had to make a detour to get around it and the base.

We are not apprised of the theory upon which the trial court ruled either of defendants' separate motions for a directed verdict. Both defendants, on appeal, insist the evidence definitely establishes that Mrs. Sutton was guilty of contributory negligence as a matter of law. The City also asserts (1) that obstructions placed upon the street for the benefit of the public do not render the street defective unless they unreasonably obstruct or endanger public travel and that the sign did not unreasonably endanger Mrs. Sutton; and (2) that the City was acting in its governmental capacity in permitting the sign to be maintained upon the street and while so acting the City is not liable even for its negligent acts. Fox asserts (1) that, being an abutting owner, it was under no obligation to keep the adjacent sidewalk free of obstructions originating from sources other than its own premises and that assuming all of the persons on the sidewalk were awaiting admission to the theatre, which Fox denies, such user thereof was proper and it was not negligent; (2) that the presence of the sign on the sidewalk was as well known to plaintiffs as to Fox and there can be no liability for injuries from dangers as well known to plaintiffs as to Fox; and (3) that the presence of the crowd was not a proximate cause of Mrs. Sutton's injuries.

It should be here also stated that plaintiffs allege (and both defendants deny) that the sign, in and of itself, was, when placed upon the sidewalk, inherently dangerous and constituted a nuisance—a controverted issue of law and fact, which we find unnecessary to decide.

The matter of first concern is whether Mrs. Sutton was, as a matter of law, guilty of negligence contributing to her fall and resultant injuries; this, of course, for the reason that if she was, then neither she nor Mr. Sutton (his action being derivative) is entitled to recover.

Defendants contend that the evidence leaves no doubt that Mrs. Sutton was guilty of such negligence and cite many cases which they insist support their contentions. They point out that she had passed the theatre on many occasions; had seen the sign and well knew that it long had been maintained in front of the theatre; that on the day in question she was confronted with and saw the sign before tripping upon its base and was conscious of the fact that she had to go around it; that ordinary care for her own safety required her to exercise the diligence of a reasonably careful person confronted with a like situation to avoid tripping over its base; and that these facts, considered in the light of the cases cited, conclusively establish as a matter of law that she failed to exercise the care so required of her. Were the facts as simple as those upon which defendants premise their conclusion, we would be inclined to agree with them, but they are not.

■ Although the evidence shows that Mrs. Sutton had previously seen the sign in front of the theatre on numerous occasions, yet her testimony was that she had never noticed its base, and it must be conceded that the nature and content of the message on the sign is such as to attract the attention of the casual passerby to its message rather than to the formation of its base. Yet, despite this feature of the sign, we would have no hesitancy in holding that any person approaching the sign in daylight upon an uncrowded street in a position to see it in its entirety and observe the flaring out of the irons supporting it and whose attention was not otherwise reasonably distracted would be chargeable with negligence if he tripped over it in attempting to avoid coming into contact with it. That, however, is not the situation here presented. Here, Mrs. Sutton was confronted with the necessity of threading her

way through a "dense" crowd that extended from the curb to the building line, not only in front of the theatre but also on both sides of it. She was not as tall as the average height of the crowd and was primarily intent upon getting through the crowd and, to some extent, necessarily distracted by it. She did not and, it may be inferred, could not see the sign until she was immediately in front of and so close upon it that she could not see its base. Under these circumstances, would this court be justified in holding that she was guilty of negligence as a matter of law in attempting to go around the sign without first ascertaining that it was supported by iron braces which at the bottom thereof flared out to the front and back a distance of 34 by 35 inches and upon which she might trip if unaware of their presence? In other words, is this court to declare as a matter of law that reasonable care on her part required her to anticipate that defendants would permit to remain upon a public sidewalk in front of the theatre (at which a crowd of its patrons stood) a sign with a base so constructed that it well could catch her foot in attempting to go around it and, therefore, required her first to ascertain that it was supported by iron braces flaring out in front of its lower corners and then to avoid them? None of the cases cited by defendants nor any found by us shed any light upon a situation comparable to that here presented and nothing would be gained by further discussion of them. Typical of the many cases cited by defendants are: Wheat v. City of St. Louis, 179 Mo. 572, 78 S.W. 790; Clark v. Missouri Natural Gas Co., Mo.Sup., 251 S.W.2d 27; Jett v. City of Paris, Mo.App., 326 S.W.2d 365; Waldmann v. Skrainka Const. Co., 289 Mo. 622, 233 S.W. 242; Hamilton v. Laclede Electric Cooperative, Mo.Sup., 294 S.W.2d 11, 16; and Branscum v. Glaser, Mo.Sup., 234 S.W.2d 626, 627.

We are convinced and hold that the facts shown in evidence, considered from the standpoint of whether Mrs. Sutton was in the exercise of ordinary care under the circumstances shown, presented a jury question as to her contributory negligence. See Freeman v. Myron Green Cafeterias Co., Mo.Sup., 317 S.W.2d 303, 306–308 [6, 7, 8]; Goldman v. City of Columbia, Mo. App., 211 S.W.2d 541; Harbourn v. Katz Drug Co., Mo.Sup., 318 S.W.2d 226, 232. Contrast the cases of Clark v. Missouri Natural Gas Co., Mo.Sup., 251 S.W.2d 27, and Jett v. City of Paris, Mo.App., 326 S.W.2d 365, wherein the plaintiffs were well aware of the dangerous defect or obstruction and nothing had occurred to divert their attention from it.

*As to the submissibility of the case against the City:*

Its first contention is that "obstructions placed upon the street for the benefit of the public do not render the street defective unless they unreasonably obstruct or endanger public travel," citing in support thereof 19 McQuillin, Municipal Corporations, 3rd Ed., pages 196–197, 239, and Freeburne v. City of Emporia, 176 Kan. 503, 271 P.2d 298. We find no fault with that contention. The question to be determined is, therefore, whether a jury would be warranted in finding that a sign of the size and form here shown, placed and maintained upon a public sidewalk in front of a theatre at which crowds frequently assemble, would, under the circumstances here shown, unreasonably obstruct and endanger public travel—a question we later herein explore.

■ The next contention is that the "City was acting in its governmental capacity in permitting the sign to be maintained upon the street, and while so acting it is not liable even for its negligent acts." Cited in support of that contention are: Carruthers v. City of St. Louis, 341 Mo. 1073, 111 S.W.2d 32; Auslander v. City of St. Louis, 332 Mo. 145, 56 S.W.2d 778; Hiltner v. Kansas City, Mo.Sup., 293 S.W. 2d 422; and Blackburn v. City of St. Louis, 343 Mo. 301, 121 S.W.2d 727. Each of those cases deals with traffic devices, signs or directions that allegedly were negligent-

ly so placed or maintained by the city as to cause injury to the plaintiff. Each announces the doctrine that direction of traffic is a governmental function and that a city cannot be held liable in damages for its negligence in regulating or failing to regulate traffic. We think they have no bearing upon the City's permissive user of the sidewalk for the maintenance of the recruiting sign here under consideration. A municipality such as the City of Joplin derives its governmental powers from the state rather than from the federal government and exercises generally only such governmental functions as are expressly or impliedly granted it by the state. Certainly, we have found no case or text, and the City has directed our attention to none, whereby we may conclude that it engages in a *governmental function* in lending its moral support to the recruitment of enlistees in the armed forces. Finding no basis for any reasoned conclusion that it acted in a governmental capacity in permitting the sign to be placed and maintained as shown by the evidence, we can only conclude that, in so doing, it must be held to have acted in its municipal capacity. In assuming to act as though it were in duty bound to permit the sign to be placed upon the City's sidewalk, we think it must be held to account for injuries sustained by users of the sidewalk as a direct result of its negligence in the performance of the duty so assumed. "A municipality cannot escape responsibility for the careful performance of a duty which is substantially one of a local or corporate nature because it may in some general way also relate to a function of the government, or although it may inure incidentally to the advantage of the public." 38 Am.Jur., Municipal Corporations, § 574, p. 268.

█ The law in Missouri is clear that it is the primary and non-delegable duty of the city to exercise ordinary care to keep its streets in a reasonably safe condition for travel. This duty is clearly set forth and buttressed by the cases cited in Burgess v. Kansas City, Mo.App., 242 S.W.2d 591.

In that case the city had issued a permit to one of the original defendants, Koury, to operate a lunch wagon on the parkway between the sidewalk and curbing on Southwest Boulevard. An angle iron was attached to the wagon so that it could be pulled from place to place. The angle iron was about 18 inches long, 4 or 5 inches wide, 3 inches thick, and projected out from the wagon at a level of about 1 foot above ground. Plaintiff parked his automobile near the location of the wagon after dark. He got out of the car, started walking across the parkway toward the sidewalk, struck his leg against the protruding angle iron, causing severe injuries. The city attempted to shift the responsibility from it to Koury. The court, in passing on that question, stated, loc.cit. 592:

"We think the city had the legal right and duty to *remedy* the *condition,* which the jury found was dangerous, and that it could not escape liability by shifting that responsibility to defendant, Koury. City of Springfield v. Stevens, 358 Mo. 699, 216 S.W.2d 450, 459; Crockett v. City of Mexico, 336 Mo. 145, 77 S.W.2d 464, 466; Benton v. City of St. Louis, 217 Mo. 687, 118 S. W. 418; Young v. City of St. Louis, Mo.App., 178 S.W.2d 641, 646; State ex rel. Kansas City v. Shain, Mo.Sup., 177 S.W.2d 511, 512; Carruthers v. City of St. Louis, 341 Mo. 1073, 111 S.W.2d 32, 35; Wendegatz v. Kansas City Gas Co., Mo.App., 217 S.W.2d 269; Hall v. City of St. Joseph, 163 Mo.App. 214, 146 S.W. 458. In Benton v. City of St. Louis, supra, the court said, 217 Mo. 700, 118 S.W. 421: 'A city owns and controls its streets as a trustee for the public. It, therefore, stands charged by the law with the primary and bounded duty of keeping them free from nuisances, defects and obstructions caused by itself or by third parties if it (in the latter instance) had actual or constructive notice thereof in time to abate the nuisance, remove the obstruction, or repair

the defect. It cannot shirk that duty, or shift it over to, or halve it with, others. So much is clear law in Missouri.'"

As hereinabove indicated, we do not hold that the sign, when placed upon an open sidewalk so that it could be viewed in its entirety by persons in the exercise of ordinary care for their own safety, would necessarily amount to such a hazardous obstruction as to subject the city to liability. But, we are convinced that when it is shown, as the evidence herein tends to show, that the sign and especially the base thereof was closely surrounded by a dense crowd of people so as to obstruct a view of its base and endanger the safety of a person using the sidewalk in the exercise of ordinary care for his own safety, then a duty rested upon the City to cause its removal or to warn travelers using the sidewalk of the hazard existing, if the City in the exercise of ordinary care knew or should have known of the condition. See cases above cited. And we are further convinced that the evidence would warrant a finding that the City knew or in the exercise of ordinary care should have known (1) that the sign, maintained in varying positions in front of the theatre, might and well could become so obscured by crowds there gathered as to endanger persons using the sidewalk to pass through the crowd, and (2) that it knew or in the exercise of ordinary care should have known that crowds did gather in front of the theatre here involved; it does not contend otherwise. So concluding, we hold that a submissible case was made against the City.

*As to the submissibility of the case against Fox Theatre:*

It is true, as contended by Fox and conceded by plaintiffs, that as a general rule an abutting property owner is under no obligation to keep an adjacent sidewalk free of defects and obstructions originating from sources other than its own premises. Stith v. J. J. Newberry Co., 336 Mo. 467,

79. S.W.2d 447, 453; Berry v. Emery, Bird, Thayer Dry Goods Company, 357 Mo. 808, 211 S.W.2d 35, 40; Restatement, Torts, Vol. 2, § 349, p. 956. But it also is a well established principle of law that an abutting owner "is subject to liability for bodily harm caused to travelers [on the highway] by a failure to exercise reasonable care to maintain in reasonably safe condition any structure *or other artificial condition created in the highway by him or for his sole benefit * * *"* (Emphasis supplied.) Restatement, Torts, Vol. 2, § 350, p. 958. An exemplification of that rule is shown in Reedy v. St. Louis Brewing Ass'n et al., 161 Mo. 523, 61 S.W. 859, 861, 53 L.R.A. 805 wherein it is said:

"This liability does not arise from the fact that he is owner of property abutting the sidewalk, but from the fact that he is instrumental in causing the condition, either by his willful act or negligent omission to perform a duty which the law imposes on him. If he is allowed an extraordinary use of the sidewalk for his private convenience, as, for example, to place in it a manhole for the reception of coal (Benjamin v. Railway Co., 133 Mo. 274, 34 S.W. 590), a water meter (Carvin v. City of St. Louis, 151 Mo. 334, 52 S.W. 210), or an excavation in close proximity to the sidewalk for a foundation for a new building (Wiggin v. City of St. Louis, 135 Mo. 558, 37 S.W. 528), the law imposes on him the exercise of reasonable care to guard the public from injury in such use. And it may be said that if the individual neglect to perform any duty that the law imposes on him in particular, and a dangerous condition of the sidewalk results, then a new duty on him in relation to that condition arises, and, of course, with greater force, it would be so if that condition was the result of his willful act."

See also Fletcher v. North Mehornay Furniture Co., 359 Mo. 607, 222 S.W.2d 789, 793–794 [3]; State ex rel. Shell Petroleum

Co. v. Hostetter, 348 Mo. 841, 156 S.W.2d 673, 675; Stith v. J. J. Newberry Co., supra, 336 Mo. 467, 79 S.W.2d 447, 453.

Fox insists that the rule announced in these cases is not applicable. It argues that, inasmuch as persons have a right to congregate upon and use the public sidewalks for a proper purpose so long as they do not unreasonably obstruct traffic; inasmuch as Fox, an abutting owner, had the right to use the sidewalk under an "easement of access", including the privilege of its patrons to occupy the sidewalk for a reasonable length of time in obtaining access to its theatre; and, inasmuch as the crowd so assembled was not shown to have been collected in front of the theatre for more than six or seven minutes in any event, was orderly and did not jostle or unduly impede the progress of plaintiffs as they went through it: Mrs. Sutton's injuries were not the result of any negligent act on its part.

■ We are forced to the conclusion that the arguments so advanced do not answer the essential question here presented. Here, the evidence, we think, would warrant a jury in finding: (1) that the crowd assembled in front of the theatre was predominantly composed of Fox patrons awaiting admission thereto; (2) that it was assembled at the instance of Fox for the benefit of Fox; (3) that, while the crowd, as such, presented no hazard to the safe progress of Mrs. Sutton, yet, as it stood and "milled around" the sign, it prevented Mrs. Sutton, in the exercise of ordinary care for her own safety, from seeing and appreciating the hazard of attempting to step around its extended base; (4) that Fox was chargeable with notice of the location of the sign and was chargeable with notice of the hazard thus presented; and (5) that the "artificial condition" thus created on the sidewalk by Fox, in causing and permitting the crowd assembled by it for its own benefit to gather so closely around the sign as unreasonably to endanger safe passage along the side-

walk by Mrs. Sutton, imposed upon Fox "the exercise of reasonable care to guard the public from injury in such use". Reedy v. St. Louis Brewing Ass'n et al., supra [161 Mo. 523, 61 S.W. 861, 53 A.L.R. 805] and brought Fox within the rule of law above quoted from Restatement, Torts, Vol. 2, § 350, p. 958.

Fox also contends that the presence of the sign was as well known to Mrs. Sutton as to Fox and that there can be no liability for injuries from dangers as well known to her as to Fox. Typical of the cases cited in support of that contention are: Fletcher v. North Mehornay Furniture Co., 359 Mo. 607, 222 S.W.2d 789, 794; Schmoll v. National Shirt Shops, 354 Mo. 1164, 193 S.W.2d 605; Howard v. Johnoff Restaurant Co., Mo.Sup., 312 S.W.2d 55, 57. These cases involve injuries sustained by the plaintiffs therein by reason of: In Fletcher, a slick terrazzo sidewalk in front of defendant's store; in Schmoll, a slick terrazzo lobby floor in defendant's store; in Howard, a waxed dance floor in defendant's restaurant. In each of them, the general rule was stated that the basis of liability of the owner of these business institutions to its invitees (or persons using the sidewalk in front of defendant's premises) was the owner's superior knowledge of the dangers presented and that the owners were not liable for injuries from dangers which were obvious or as well known to the plaintiffs as to the owner. That general rule is the law in Missouri, but we think it is not applicable to the facts in this case; this, for the reason that we have found that the testimony would warrant a finding that defendants did have or were chargeable with knowledge of the hazardous condition with which plaintiff came into contact and that plaintiff did not.

Fox further contends that there was no substantial evidence from which a jury could find the persons on the sidewalk were *all* awaiting admission to Fox, and even so, the presence of the crowd was not a proxi-

mate concurring cause of Mrs. Sutton's injuries. In support of that contention Fox divides its argument into two propositions: First, it says that the evidence does not support a finding that the people standing in front of "seven" different business establishments were awaiting admission to the theatre. It may be conceded that there is no direct evidence that *all* of them were. But, we think the circumstances shown in evidence, which we need not here again state, do warrant submission of a finding that the crowd, especially that portion standing in front of the theatre and surrounding the sign, was predominantly composed of Fox patrons. Second, it contends that the crowd was not a concurring proximate cause of Mrs. Sutton's injuries. Its argument runs this wise: Mrs. Sutton's view of the sign was obscured by the crowd until she reached a point immediately north of it; at that time she saw it and realized she needed to turn and go around it; there was no one standing in front of it at the time she caught her foot; when she reached it she did not change her course of direction to keep from running into some person standing in front of the sign, she changed her course to keep from going right through the sign; ergo, the crowd ceased to be a causative factor when Mrs. Sutton reached the sign immediately prior to the time she turned to go around it and there is no substantial evidence in the record that the crowd prevented Mrs. Sutton from seeing the sign and the base at the time she was making her turn to go around it.

Pellett v. Thomas W. Garland, Inc., Mo. Sup., 152 S.W.2d 172, 173, is cited in support of that contention. It merely holds, in substance, as we read it, that when a customer of defendant's store was thrown to the floor from a chair in which she was sitting in an aisle of the store by reason of the intervening negligent act of a third person, there was no liability on the part of defendant. That case is not persuasive under the facts here shown. We think our analysis of the law and the facts as applic-

able to submissibility of the case against Fox sufficiently demonstrates that a jury would be warranted in finding that the acts and omissions of Fox as above detailed constituted a direct and proximate cause of Mrs. Sutton's injuries.

We, therefore, hold that a submissible case was made against each and both defendants and that the court erred in directing a verdict against plaintiff and in entering judgment in favor of defendants.

The judgment is reversed and the cause remanded for further proceedings not inconsistent with the views herein expressed.

All concur.