**926**

Leona MILLER, Respondent,

v.

KANSAS CITY, Missouri, Appellant.

No. 55604.

Supreme Court of Missouri,
Division No. 1.

May 10, 1971.

Motion for Rehearing or to Transfer to Court
En Banc Denied June 14, 1971.

Lantz Welch, Kansas City, for respondent.

Aaron A. Wilson, City Counselor, Robert A. Dakopolos, Charles A. Lewis, Associate City Counselors, Thomas C. Clark, Asst. City Counselor, Kansas City, for appellant.

HOUSER, Commissioner.

Kansas City has appealed from a judgment for $50,000 rendered on a jury verdict in favor of Leona Miller in her action for damages for personal injuries sustained in a fall on a public sidewalk.

The city's first point is that plaintiff failed as a matter of law to make a submissible case of actionable negligence. Its first contention is that the alleged defect was so slight and trivial that it could not reasonably be anticipated that such a variation in the surface of the sidewalk would likely cause injury to pedestrians.

Plaintiff, age 67, was walking on the south sidewalk of Westport Road in Kansas City at a point about 15 or 20 feet east of the Westport Bakery, between 7:30 and 8 o'clock p. m. on April 1, 1966. It was very dark. Plaintiff testified that as she was walking "all of a sudden" she felt something grab her left heel and she was thrown over on her left side. While lying there plaintiff felt the broken concrete and saw a little raise in the sidewalk pavement which, although she could not say exactly, she imagined was "an inch, an inch and a half or two inches" in height. Photographic Exhibits 1, 2 and 3 verify her judgment as to the existence and height of the elevation in the sidewalk, and demonstrate an irregular crack near the center of

the sidewalk, running for several feet roughly parallel to the street and that the crevice it formed, at the point where plaintiff fell, was as wide as the difference in the elevation of the sidewalk on the two sides of the crack. The next day plaintiff's companion returned to the scene to locate and identify the spot where plaintiff fell. In the crack where plaintiff had stepped the night before she found shoe polish and leather off plaintiff's shoe "where she had turned her ankle."

The city cites Maxwell v. Kansas City, Mo., 227 Mo.App. 234, 52 S.W.2d 487; Lundahl v. Kansas City, Mo.App., 209 S. W. 564, and Taylor v. Kansas City, 342 Mo. 109, 112 S.W.2d 562, for the proposition that mere elevations of two inches or less in sidewalks are so trivial that a municipality is not liable therefor, but concedes that a jury issue may be made against a municipality if sidewalk elevations *and surrounding conditions* render a sidewalk not reasonably safe or dangerous to pedestrian travel, under Taylor v. Kansas City, supra, and Fischer v. Kansas City, Mo.App., 446 S.W.2d 451. And see Seitter v. City of St. Joseph, Mo.App., 358 S.W.2d 263, 267.

In the Fischer case, in which the court of appeals held that a submissible jury case was made, a slab of sidewalk was raised one to one and a quarter inches. The court did not consider the elevation the sole determinative factor but took into account the appearance of the defect; whether it was plainly visible or somewhat obscured; whether it was in a busy area where the pedestrian was obliged to maintain a lookout for traffic; whether it was near a bus stop, etc. There was such evidence and that the defect was not readily apparent, being obscured by dead grass, dirt and debris. Numerous other cases cited in Fischer confirm the conclusion reached there, that a jury could reasonably find that a defect of the size in question, combined with other surrounding circumstances and factors such as those pointed

out, may make a city liable for maintaining a sidewalk in that condition.

Leona Miller testified that she was unfamiliar with the area; did not trade there; that while she had been to the bakery "a couple of times" she had not gone there often, as she did most of her own baking; that it was dark—"very dark"—and that she did not see the place where she fell. Plaintiff's companion at the time she fell could not see, and because of the darkness did not notice, the crack into which plaintiff stepped. On the south sidewalk there was, in addition to the bakery, a garage, a plumbing storage space, a plumbing office and a used washing machine business. In the vicinity there was a restaurant and a Safeway Store.

■ Considering the nature and appearance of the defect; the elevation of an inch or two; that the city had been notified of the defect; that it was very dark as a result of which the defect was not plainly visible; that the accident occurred in a business area, and the other surrounding circumstances, there was sufficient evidence to submit to a jury the question whether in maintaining the sidewalk in that condition under the circumstances the city was guilty of negligence and there was sufficient evidence for a jury to find that the city's conduct subjected persons lawfully using the sidewalk to an unreasonable risk of bodily injury when proceeding along that place on a dark night.

■ The city's second contention under Point I is that plaintiff's witnesses placed her fall at a place on the sidewalk where the evidence showed some patchwork had been done by an unnamed party, and therefore the city is not liable under the rule that where several causes may have been responsible for an injury it is incumbent on the plaintiff to show the cause "for which defendant is liable" produced the fall and consequent injuries, and that plaintiff did not make such proof. Citing Treon v. City of Hamilton, Mo.Sup., 363

S.W.2d 704; State ex rel. Kansas City v. Shain, Mo.Sup., 177 S.W.2d 511, and Lithegner v. City of St. Louis, Mo.App., 125 S.W.2d 925, plaintiff correctly answers this contention, urging that the city "has a non-delegable duty to maintain its streets and sidewalks in reasonably safe condition or to warn of dangers and defects and the fact that the City did not cause the defect in the sidewalk will not relieve the City of its duty to exercise ordinary care to discover or remedy such defects if said sidewalk was thereby rendered unsafe for public use." There is no evidence of warning and no evidence to contradict the testimony of the owner of the nearby bakery that several months before this accident occurred he reported to the city "that the sidewalks out here were in real bad shape, big cracks and they were very uneven, and we had had people complaining about stumbling over them."

The city's second point is that plaintiff was contributorily negligent as a matter of law in causing her fall and subsequent injuries; that she had the duty to make reasonable use of her eyesight and senses to observe any defects or obstructions in plain view along the sidewalk; that she knew about the dark condition of the walk, because she testified repeatedly about the darkness. Conceding that pedestrians held contributorily negligent have generally been limited to those persons who *with knowledge of a defective or dangerous condition* subsequently acted in a manner not reasonably prudent, the city contends that under Waldmann v. Skrainka Const. Co., 289 Mo. 622, 233 S.W. 242, the darkness made it all the more incumbent upon plaintiff to look out for danger in passing over the sidewalk; that she should have been especially careful; that pedestrians are duty bound to use ordinary care in traversing sidewalks. But plaintiff Waldmann had knowledge of the defect, having passed the excavation earlier in the evening, whereas plaintiff Miller had no prior knowledge of the defect. There was a red light in the center of the excavation in Waldmann, but no warning of any kind in Miller. Jett v. City of Paris, Mo.App., 326 S.W.2d 365, cited by the city, is likewise distinguishable. There on a bright sunshiny day, while looking at it, plaintiff Jett knowingly walked into a broken place, and knew no reason why she could not have stepped over the 2½ inch step-up.

■ A pedestrian who has no knowledge of a defect has a right to assume that the sidewalk is in a reasonably safe condition. He is " * * * not required to search for a possible defect or make of himself a sidewalk inspector, but is required to do nothing more than to conduct himself as reasonably prudent persons do under the circumstances." Fischer v. Kansas City, supra, 446 S.W.2d, l.c. 454. "As a general rule a person is not required to look for danger when there is no cause to anticipate danger." Williamson v. St. Louis Pub. Serv. Co., 363 Mo. 508, 252 S.W. 2d 295, 299.

■ Nothing here indicates that plaintiff had no right to make this assumption; nothing to cause plaintiff to anticipate danger. The question of contributory negligence was for the jury in this case where there was evidence from which a jury could conclude that plaintiff was walking along the sidewalk at a leisurely pace, not in any hurry, looking ahead five or six feet, watching where she was going, looking down at the walk; where because of her unfamiliarity with the area she had no knowledge of the defect and no notice of the danger; where the defect, unseen by her or her companion, was obscured from sight by darkness, and where she testified that if she had seen the place before she fell she would have walked around it "because [she] wouldn't have wanted to take a chance."

Judgment affirmed.

WELBORN and HIGGINS, CC., concur.

PER CURIAM:

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

SEILER, P. J., BARDGETT, J., and SEMPLE, Special Judge, concur.

HOLMAN, J., not sitting.